A07A1811. ROYLSTON v. BANK OF AMERICA, N.A. et al.
(660 SE2d 412)

BERNES, Judge.

Appellant David Roylston filed this lawsuit seeking damages for breach of the Georgia Residential Mortgage Act ("GRMA") and wrongful foreclosure of real property against the foreclosing lien holders, Bank of America, N.A. and Wachovia Bank, N.A. f/k/a First Union National Bank, N.A.[1] Roylston claimed that the banks failed to provide him with proper notice of the foreclosure sales. The banks filed motions for summary judgment and sought attorney fees, arguing that Roylston's claims were frivolous. Roylston filed a cross-motion for partial summary judgment against Bank of America. The trial court granted summary judgment as to all claims in favor of the banks and denied Roylston's motion. Roylston appeals, contending that the trial court erred in granting Bank of America's motion for summary judgment and in awarding attorney fees to both Bank of America and Wachovia. For the reasons that follow, we affirm the trial court's award of attorney fees to Wachovia, but reverse the trial

---

[1] Roylston also alleged causes of action for declaratory judgment, to stay the transfer of excess sales proceeds, for an award of attorney fees and costs, for money had and received, and for negligence. The trial court granted summary judgment to the banks on these claims. Because Roylston has failed to provide argument or citation of authority as to these additional claims, he has abandoned any argument that summary judgment on these claims was improper. See Court of Appeals Rule 25 (c) (2); *Dashtpeyma v. Wade*, 285 Ga. App. 361 (1) (646 SE2d 335) (2007).

court's decision granting summary judgment and awarding attorney fees to Bank of America on the wrongful foreclosure claim.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the evidence shows that the foreclosed property, a private residence, was formerly owned by Kyoung and Deok Lee. The Lees pledged the property as security for a first mortgage with Bank of America, a second mortgage with Wachovia, and a third mortgage with Summit Bank. The Lees defaulted on their loans and filed for bankruptcy. Wachovia and Bank of America, both of which were represented by the same law firm, subsequently moved for relief from the automatic bankruptcy stay, which was granted.

Wachovia then initiated foreclosure proceedings against the property. Wachovia sent notice of the foreclosure to the Lees and issued published notice. The published notice stated that the property would be sold subject to all "matters superior to the [s]ecurity [d]eed" held by Wachovia and stated that the sale was "subject to security deed recorded in Deed Book 11177, Page 282," i.e., the first priority security interest held by Bank of America. Roylston purchased the property as the highest bidder at the foreclosure sale on May 3, 2005, extinguishing the second mortgage held by Wachovia and the junior third mortgage held by Summit.

Roylston did not receive the deed from the foreclosure sale until June 4, 2005. A few days later, on June 7, 2005, Bank of America foreclosed upon its first priority lien against the property. While Bank of America had issued a public notice of the sale, it did not mail written notice to Roylston prior to conducting the foreclosure.[2] At the Bank of America foreclosure sale, a third party acquired title to the property as the highest bidder.

Following Bank of America's foreclosure sale, Roylston filed suit seeking the excess proceeds from both foreclosure sales and damages based upon claims that Wachovia and Bank of America failed to

---

[2] Bank of America had mailed notice of the foreclosure sale to the Lees in April 2005, prior to the time that Roylston had acquired the property.

provide proper notice of the foreclosure sales. Both banks filed motions for summary judgment and for attorney fees under OCGA § 9-15-14 relating to frivolous lawsuits. The trial court granted the banks' motions.

1. Roylston argues that the trial court erred in granting summary judgment to Bank of America because he was entitled to mailed notice of the foreclosure sale pursuant to the GRMA and OCGA § 44-14-162.2.[3] We conclude that Roylston's claim failed to fall within the purview of the GRMA, and therefore, summary judgment was properly granted as to that claim. In contrast, we conclude that summary judgment was improper as to Roylston's wrongful foreclosure claim predicated upon OCGA § 44-14-162.2.

(a) Roylston first claims that Bank of America violated OCGA § 7-1-1013 (6) of the GRMA when it failed to provide him with mailed notice of its foreclosure proceedings. OCGA § 7-1-1013 (6)[4] prohibits any person transacting a mortgage business from "[e]ngag[ing] in any transaction, practice, or course of business which is not in good faith or fair dealing, or which operates a fraud upon any person, in connection with the attempted or actual making of, purchase of, transfer of, or sale of any mortgage loan." The plain language of the statute limits its applicability to the actions taken to make, purchase, transfer, or sell mortgage loans.

Significantly, however, Roylston's claims in this case did not relate to the making, purchase, transfer, or sale of a mortgage loan. Rather, Roylston's challenge in this case was to a foreclosure sale. In a foreclosure sale, title to the property is sold and transferred to the highest bidder, but the security interest itself is not sold or transferred; instead, it is extinguished altogether upon satisfaction of the debt from the sale proceeds. See generally *Coleman Road Assoc. v. Culpepper*, 214 Ga. App. 475, 475-476 (1) (448 SE2d 83) (1994). In light of this distinction between the sale of a mortgage loan and a foreclosure sale, we do not consider the GRMA to be applicable in this case. Accordingly, the trial court's decision granting summary judgment in favor of Bank of America as to Roylston's GRMA claim was proper.

(b) We reach a different conclusion as to Roylston's claim for wrongful foreclosure. OCGA § 44-14-162.2 (a) governs the provision of notice of a foreclosure sale and mandates that no later than 15 days before the date of the proposed foreclosure, the secured creditor must

---

[3] Roylston does not enumerate as error the trial court's denial of his motion for partial summary judgment against Bank of America.

[4] OCGA § 7-1-1013 (6) was enacted as part of the GRMA to regulate the licensing of mortgage lenders and brokers. See Ga. L. 1993, p. 543, § 1.

send the debtor written notice of the foreclosure by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address designated in writing by the debtor to the secured creditor. See OCGA § 44-14-162.2 (a). In turn, OCGA § 44-14-162.1 defines the debtor who is entitled to such written notice of the foreclosure and pertinently provides that

> [i]n the event the property encumbered by the mortgage, security deed, or lien contract has been transferred or conveyed by the original debtor, the term "debtor" shall mean the current owner of the property encumbered by the debt, if the identity of such owner has been made known to and acknowledged by the secured creditor prior to the time the secured creditor is required to give notice pursuant to [OCGA §] 44-14-162.2.

Thus, the current owner of property encumbered by debt is a "debtor" within the meaning of OCGA § 44-14-162.1, and is therefore entitled to receive the notice prescribed by OCGA § 44-14-162.2, if the identity of the owner is known to the creditor. *Wright v. Barnett Mtg. Co.*, 226 Ga. App. 94, 97 (3) (485 SE2d 583) (1997).[5]

Where a foreclosing creditor fails to comply with the statutory duty to provide notice of sale to the debtor in accordance with OCGA § 44-14-162 et seq., the debtor may either seek to set aside the foreclosure or sue for damages for the tort of wrongful foreclosure. *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285, 285-286 (1) (443 SE2d 837) (1994). If the debtor elects to sue for damages, the recovery allowed is "the full difference between the fair market value of the property at the time of the sale and the indebtedness to the seller if the fair market value exceeded the amount of the indebtedness." (Citations omitted.) *Dickens v. Calhoun First Nat. Bank*, 208 Ga. App. 489, 491 (2) (431 SE2d 121) (1993), rev'd on other grounds, 264 Ga. 285.

Bearing these legal principles in mind, we address whether Roylston was a "debtor" entitled to notice of Bank of America's

---

[5] Bank of America's citation to OCGA § 9-13-140 governing published notice of a foreclosure sale is unavailing. Notwithstanding the requirement to provide published notice of foreclosure sales, OCGA § 44-14-162.2 (a) imposes additional requirements for mailing written notice to the debtor or current property owner as defined by OCGA § 44-14-162.1. While the evidence establishes that there was published notice of the foreclosure sale, it is undisputed that Bank of America did not send mailed notice of the foreclosure to Roylston pursuant to OCGA § 44-14-162.2 (a).

foreclosure sale in accordance with OCGA § 44-14-162.2. The evidence establishes that Roylston acquired ownership of the property on May 3, 2005, more than one month in advance of Bank of America's subsequent foreclosure sale on June 7, 2005. Roylston thus had become the owner of the property well before Bank of America was required to give its 15-day notice of the sale under OCGA § 44-14-162.2 (a). As such, Roylston was a "debtor" entitled to receive the required statutory notice of the foreclosure sale, if Bank of America had actual knowledge of his identity as owner of the property. See *Wright*, 226 Ga. App. at 97 (3). We conclude that the evidence presents a genuine issue of material fact as to whether the attorneys who handled the Bank of America foreclosure sale had actual knowledge that Roylston was the owner of the property — knowledge which could be imputed to Bank of America based on agency law principles.

> The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it; provided, however, that such notice or knowledge will not be imputed: 1. Where it is such as it is the agent's duty not to disclose, and, 2. Where the agent's relations to the subject-matter, or his previous conduct, render it uncertain that he will not disclose it, and, 3. Where the person claiming the benefit of the notice, or those whom he represents, colluded with the agent to cheat or defraud the principal. *This rule is applicable to the relation of attorney and client.*

(Citations and punctuation omitted; emphasis supplied.) *Bean v. Barron*, 176 Ga. 285, 285-286 (168 SE 259) (1933). See also *Faircloth v. Taylor*, 147 Ga. 787, 789 (a) (95 SE 689) (1918). Hence, "[i]t is well settled that notice to an attorney is notice to the client employing him, and that knowledge of an attorney is knowledge of his client, when such notice and knowledge come to the attorney in and about the subject matter of his employment." (Citation omitted.) *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 630-631 (1) (a) (466 SE2d 872) (1995).

Here, the evidence reflects that the Wachovia and Bank of America foreclosure transactions were both handled by the same law firm, which served as the agent for both banks. It can be inferred that one or more of the attorneys who worked on and conducted the Wachovia foreclosure sale were aware of who purchased the property

as part of that sale and had seen the documentation reflecting the same; indeed, it is clear that the sale information clearly was in the Wachovia file and had been accessed, in light of the deed subsequently sent by the law firm to Roylston evidencing his purchase. See generally *Fann v. Mills*, 248 Ga. App. 460, 464-465 (2) (546 SE2d 853) (2001) (inferring actual knowledge based on circumstantial evidence). And, significantly, the record further reflects that several of the attorneys who worked on the Wachovia foreclosure also worked on the Bank of America foreclosure. For example, the same attorney from the law firm sought and obtained orders granting relief from the stay in the bankruptcy court so that both foreclosures could be conducted. Furthermore, the same attorney appears on the published notices for both of the foreclosure sales.[6] In light of additional evidence that the law firm was working on both foreclosure transactions during the same time period and ultimately conducted both foreclosure sales within a one-month time span, a finder of fact would be authorized to conclude that one or more of the attorneys who handled the Bank of America foreclosure knew that Roylston had previously acquired ownership of the property as the highest bidder at the Wachovia foreclosure sale. In turn, this evidence would authorize a jury to find that Bank of America, through its law firm agent, had actual knowledge of Roylston's ownership interest in the property and thus was required, but failed, to afford him the statutory notice provided by OCGA § 44-14-162.2 (a).[7] See *Wright*, 226 Ga. App. at 97 (3). Consequently, the trial court erred in granting summary judgment to Bank of America on Roylston's wrongful foreclosure claim. See *Dickens*, 208 Ga. App. at 490-491 (2), rev'd on other grounds, 264 Ga. 285.

2. Roylston also argues that the trial court erred in granting attorney fees to Wachovia and Bank of America under OCGA § 9-15-14. The trial court granted attorney fees to Bank of America based upon its finding that Roylston's claims lacked substantial justification. The trial court also granted attorney fees to Wachovia, concluding that its motion for fees was "well taken" based upon its findings that "under no construction of any document, law or circumstances would Roylston ever be entitled to the excess proceeds from the

---

[6] We also note that although it is unclear whether he or she was an attorney with the law firm, the same "lender representative" appeared and signed the announcement at sale documents for both foreclosure sales.

[7] We note that the present case does not involve a question of attorney-client privilege because the identity of the purchaser at the Wachovia foreclosure sale was public information.

[Wachovia] [f]oreclosure [s]ale" and that there was "no merit in [Roylston's] contention that Wachovia's foreclosure of the [p]roperty was wrongful."

> OCGA § 9-15-14 (a) provides that the trial court shall award reasonable and necessary attorney fees where the offending party's position lacked any justiciable issue of law or fact so that it could not be reasonably believed that a court would accept it. OCGA § 9-15-14 (b) provides that the trial court may assess attorney fees if the action brought or defended lacked substantial justification, was interposed for delay or harassment, or an attorney or party unnecessarily expanded the proceeding by other improper conduct. OCGA § 9-15-14 (a) provides for a mandatory award of attorney fees. The standard of review for this section is the "any evidence" rule. OCGA § 9-15-14 (b) is discretionary, and the standard of review is abuse of discretion.

(Citation and punctuation omitted.) *La Petite Academy v. Prescott*, 234 Ga. App. 32, 34 (2) (506 SE2d 183) (1998). See also *Slone v. Myers*, 288 Ga. App. 8, 14 (5) (653 SE2d 323) (2007).

(a) We conclude that the trial court was authorized to award attorney fees to Bank of America based upon Roylston's claims that lacked substantial justification. Roylston abandoned most of the causes of action presented in his amended complaints, and as explained in Division 1 (a), he failed to present a valid claim under OCGA § 7-1-1013 (6) of the GRMA. Although Roylston contends that he attempted to present a novel argument for the application of the GRMA, the plain language of the statute shows that it was inapplicable to Roylston's claims, and the trial court was authorized to reject his contention that his argument was novel and not frivolous. See *Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 241 (2) (a) (620 SE2d 463) (2005) (concluding that the trial court did not abuse its discretion in finding that appellant's attempt to have the court interpret a statute in a manner contrary to its specific terms was substantially frivolous, groundless, or vexatious).

But, Bank of America was not entitled to attorney fees incurred in defending against the wrongful foreclosure claim. As stated in Division 1 (b), Roylston's wrongful foreclosure claim against Bank of America presents a genuine issue for jury resolution and thus does not lack substantial justification. See *Dills v. Bohannon*, 208 Ga. App. 531, 533 (2) (431 SE2d 123) (1993).

In awarding Bank of America attorney fees in the total amount of $6,567.50, the trial court did not apportion the fees based upon the different claims presented. "[I]n cases involving OCGA § 9-15-14 (a)

or (b), the trial court must limit the fees award to those fees incurred because of the sanctionable conduct. Lump sum attorney fees awards are not permitted in Georgia." (Citations and punctuation omitted.) *Trotter v. Summerour*, 273 Ga. App. 263, 267 (2) (614 SE2d 887) (2005). "[T]he trial court is required to exclude from any sanctions award those fees and expenses unrelated to defending against the claims deemed frivolous." Id. See also *Bienert v. Dickerson*, 276 Ga. App. 621, 627 (4) (c) (624 SE2d 245) (2005) (finding that the trial court properly apportioned its attorney fees award based upon the amount that was attributable to the misconduct). Given our reversal of the trial court's grant of summary judgment on Roylston's wrongful foreclosure claim, the attorney fees award must be vacated, and the trial court is instructed to apportion the fees to those attributable to the other claims upon which Bank of America prevailed.

(b) Roylston also challenges the trial court's award of attorney fees to Wachovia. Because the trial court was authorized to find that Roylston failed to present any valid claim against Wachovia, its award of attorney fees was proper.

Roylston's claims against Wachovia alleged that he was entitled to the excess proceeds arising from the Wachovia foreclosure sale, to which Roylston himself was the highest bidder; that Wachovia failed to provide proper notice of the foreclosure sale since it failed to disclose the third priority security interest of Summit Bank; and that Wachovia failed to state that the property was vacant in its foreclosure notice. Roylston failed to present a valid cause of action against Wachovia based upon these claims.

As explained above, the trial court was authorized to reject Roylston's contention that he presented a novel argument for the application of the GRMA in this case. Moreover, Roylston failed to present any evidence that Wachovia's foreclosure sale was improperly conducted, and he failed to show that he was harmed by Wachovia's sale, under which he obtained his ownership interest in the property. As such, the evidence fails to indicate that Roylston would be entitled to any damages from Wachovia.

Roylston's claim to the excess proceeds essentially sought a refund from the purchase price from his own winning bid, but he failed to present any legal authority that would tend to provide for such a claim. Contrary to Roylston's claims, OCGA § 44-14-190 governs the disposition of proceeds and provides for the excess proceeds to be paid to the junior mortgage lienholder, Summit Bank, or to the mortgagors, the Lees. See *Bob Parrott, Inc. v. First Palmetto Bank*, 133 Ga. App. 447, 449 (2) (211 SE2d 401) (1974). The statute, however, makes no provision for a refund to the highest bidder at sale. See OCGA § 44-14-190. Thus, the trial court was authorized to find

that Roylston's claim to the excess proceeds yielded by the Wachovia foreclosure sale lacked substantial justification.

Likewise, Roylston's claims regarding the disclosures in Wachovia's foreclosure notice would not entitle him to relief. The information required to be included in the published notice of the foreclosure sale is designated in OCGA § 9-13-140 (a), including the legal description of the property to be sold, and if possible, the street address. Roylston failed to point to any provision requiring the secured creditor to disclose the third priority security lien in the foreclosure notice. Indeed, since Summit Bank's junior lien was eliminated following the foreclosure of Wachovia's superior lien, it was inconsequential to the foreclosure sale and there was no basis for claiming that the foreclosure notice was defective for failing to disclose it. See *Hudson v. Dobson*, 260 Ga. App. 473, 475 (3) (580 SE2d 268) (2003) ("Where the holder of the senior encumbrance on realty forecloses on the property, the purchaser obtains title free of all inferior liens and any junior liens attach to the surplus of the proceeds.") (citations omitted); *Fed. Land Bank of Columbia v. Bank of Lenox*, 192 Ga. 543, 546 (2) (16 SE2d 9) (1941) ("It is the general rule that a sale under a regularly exercised power in a security deed or mortgage is equivalent to a foreclosure proceeding, and not only extinguishes the right of redemption, but divests all junior mortgages and other junior incumbrances on the property.").

In addition, Roylston failed to present any evidence that Wachovia's disclosure regarding the Lees' possession of the property had any impact on the foreclosure sale. The occupancy or vacancy of the property was unnecessary to the published notice under OCGA § 9-13-140 (a).

Because Roylston failed to present any justiciable issue of law or fact and brought claims that lacked substantial justification against Wachovia, the trial court did not abuse its discretion in its attorney fees award. See *Bircoll v. Rosenthal*, 267 Ga. App. 431, 437-439 (2) (a) (i) (600 SE2d 388) (2004) (finding that attorney fee award was authorized when plaintiff failed to produce any evidence in support of his claims).

3. Both Wachovia and Bank of America have filed motions for the imposition of sanctions against Roylston under Court of Appeals Rule 15 (b), alleging that the instant appeal is frivolous. We do not find the appeal to be frivolous, and so both motions are denied.

*Judgment affirmed in part and reversed in part, and case remanded. Ruffin, J., concurs. Blackburn, P. J., concurs fully in Divisions 1 (a), 2 (a) and (b), and 3, and concurs in the judgment only in Division 1 (b).*

*Beloin, Brown, Blum & Bear, Frederic S. Beloin, James P. Blum, Jr., Schuyler Elliott*, for appellant.

*Troutman Sanders, Mario D. Breedlove, Herbert D. Shellhouse, McCalla Raymer, William R. Willis III, Fred B. Wachter, James R. Marshall*, for appellees.