[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15340

_____

D.C. Docket No.  4:12-cv-00043-CDL

SHAWNA BATES,
a.k.a. Shawna Smith,

Plaintiff - Appellant,

versus

JPMORGAN CHASE BANK, NA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 30, 2014)

Before MARTIN, Circuit Judge, and RESTANI,[*] Judge, and HINKLE,[**] District
Judge.

_____

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by
designation.

[**] Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida,
sitting by designation.

RESTANI, Judge:

Appellant Shawna Bates (a.k.a. Shawna Smith) appeals from the district court's entry of summary judgment against her on all claims stemming from Appellee JPMorgan Chase Bank's ("Chase") actions with respect to a mortgage it holds on Bates's home.  The district court held that Bates failed to plead and support a cognizable claim for breach of contract.  Additionally, the court held that Bates failed to offer sufficient proof to support her claims of wrongful attempted foreclosure, trespass, and violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) (2011).  For the reasons below, we affirm, albeit on different grounds.

## BACKGROUND

Although the facts of the present case are extensive and convoluted, we summarize them below to the extent they are relevant to our disposition of the case.  Bates purchased a home in Georgia in mid-2008 that she financed by agreeing to a federally-insured mortgage that was later acquired by Chase.  By April 2011, Bates was already in default on the loan, having fallen two payments behind.  Because of these defaults, Chase sent notices of intent to foreclose in May and July, in addition to several other notices of default.

The present dispute began when Bates attempted to make her June, July, and August payments via a personal check that she sent to Chase on September 7,

2

2011. There is some confusion as to what occurred with this payment, but ultimately Chase rejected it because it was paid with a personal check, providing Bates with a refund check that she apparently did not receive. Chase, in the meantime, referred the loan to outside foreclosure counsel on September 8, 2011.

After her attempt at payment in September, Bates continued to miss monthly payments. Her next attempted payment was in November when she sought to pay for September, October, November, and December, but without paying the late fees. This payment was rejected because it was not made with certified funds and did not bring the account current within 60 days, in violation of Chase's policy of honoring partial payments.[1] After the payment was rejected and returned to Bates on November 22, Bates contacted Chase. This prompted the beginning of discussions with Chase representatives, the transcripts of which make clear that Chase employees were confused as to what had happened to the September payment as well as the state of Bates's account. Bates sent in the same payment two more times without using certified funds, but Chase continued to reject these payments per its policies.

Because Bates remained in default in Chase's view, Chase began publishing notices of sale in the local newspaper on December 8, 2011, with a sale date of January 2012. Upon discovering the publication and receiving a notice of

---

[1] Because Chase had returned the payment sent in September, there were at least six monthly payments, plus fees, due at this point.

3

foreclosure, Bates sent Chase a "qualified written request" ("QWR") explaining that she had paid $3,495 in September, but Chase had never credited this amount. She also informed Chase that it had rejected her subsequent payments in November three times.  Bates asked what was needed to stay in her home.

In its response of January 25, 2012, Chase explained that with respect to the September payment, the "funds were returned due to insufficient to cure the default."  Chase also noted that the later payments were returned "due to insufficient to cure default or bring account within 60 days delinquent."  The notice also emphasized that only certified funds would be accepted for the full reinstatement amount once the account was referred to foreclosure counsel.  The notice also listed the contact information of the foreclosure attorney and the Loss Mitigation department so that Bates could either obtain a loan modification or determine a reinstatement amount.[2]  Bates did not seek modification, but she did request a reinstatement quote, which the foreclosure attorney provided on January 31, 2012.

Because Bates did not make further payments, Chase continued to publish foreclosure notices in January and March, but the sales were postponed while Chase "researched," and a sale is not currently scheduled.  During the period of

---

[2] The deed allowed Bates to reinstate the loan at any time, including after foreclosure proceedings were instituted, by tendering "in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower . . . foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding."  DE 5-2 at 6.

4

July 2011 to March 2012, Chase sent inspectors to Bates's home to ensure that the property was still occupied and to value the house.

Bates filed suit in district court, alleging violations of RESPA, conversion, breach of contract, wrongful attempted foreclosure, and trespass. The district court granted summary judgment against Bates as to all claims. Bates filed a timely notice of appeal.

## DISCUSSION

I.    Breach of Contract Claims

Bates first claims that Chase breached the mortgage deed by failing to comply strictly with certain regulations promulgated by the Department of Housing and Urban Development ("HUD") as part of the Federal Housing Administration lending program. The regulations were incorporated into her deed as conditions precedent to the power to accelerate and the power of sale. Chase raises a number of objections[3] to this theory of liability, and the district court accepted some of them, essentially holding that it would be anomalous to allow a

---

[3] In addition to arguing that HUD regulations cannot form the basis of a breach of contract action, Chase also argues that any breach of contract action by Bates would be barred under the first breach doctrine. In Georgia, according to the first breach doctrine, "[i]f the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." Ga. Code Ann. § 13-4-23 (2013). The non-breaching party's performance, however, must have been rendered "useless or impossible" to be excused. Progressive Elec. Servs. Inc. v. Task Force Constr., Inc., No. A140355, 2014 Ga. App. LEXIS 389, at *13 (June 18, 2014). Nothing about Bates's default prevented Chase from continuing to perform under the deed. Moreover, taken to its logical conclusion, such a rule would prohibit any mortgagor from ever enforcing any contract terms governing acceleration and foreclosure, as these terms by definition come into play following a breach. Such an interpretation appears to be inconsistent with Georgia's articulation of the first breach rule.

suit for breach of contract based on the regulations when a direct suit for violations of the regulations is not permitted.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Norton v. Budget Rent A Car Sys., Inc., 705 S.E.2d 305, 306 (Ga. Ct. App. 2010); see Ga. Code Ann. § 13-6-1 ("Damages are given as compensation for the injury sustained as a result of the breach of a contract."). Although we conclude that Bates has established a contractual duty owed to her by Chase, we hold that Bates has failed to demonstrate any cognizable "resultant damages," even assuming Chase actually breached, which we do not decide.

As Bates concedes, there is no express or implied statutory private right of action for HUD violations. See, e.g., Roberts v. Cameron-Brown Co., 556 F.2d 356, 360 (5th Cir. 1977)[4] ("[T]he National Housing Act and the regulations promulgated thereunder deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow."); Cornelius v. Bank of Am., N.A., No. 1:12-cv-0585-JEC, 2012 U.S. Dist. LEXIS 139713, at *16 (N.D. Ga. Sept. 27, 2012); Krell v. Nat'l Mortg. Corp., 448 S.E.2d 248, 249 (Ga. Ct. App. 1994) (holding violation of HUD regulations

---

[4] The Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit issued prior to the close of business on September 30, 1981. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

did not support a private cause of action).  Georgia courts and courts in the Eleventh Circuit, however, have not addressed directly the question of whether a mortgagor has a cause of action under state law for breach of contract where the contract expressly conditions non-judicial foreclosure on compliance with HUD regulations.

Courts are split on this question, with some courts refusing to recognize such claims, citing either to the fact that no private right of action exists to enforce the regulations or to other principles of contract law, such as the pre-existing duty rule. See Dixon v. Wells Fargo Bank, N.A., No. 12–10174, 2012 U.S. Dist. LEXIS, at *21–26 (E.D. Mich. Sept. 25, 2012) (rejecting a breach of contract claim based on HUD regulations incorporated into the contract because Michigan law does not permit breach of contract to lie where there is an independent statutory duty to comply with the regulations); Mitchell v. Chase Home Fin. LLC, No. 06-cv-2099, 2008 U.S. Dist. LEXIS 17040, at *8–11 (N.D. Tex. March 4, 2008); Wells Fargo Home Mortg., Inc. v. Neal, 922 A.2d 538, 543–47 (Md. 2007) (holding that mortgagor could not assert breach of contract claim in view of fact that deed was a form contract not drafted by lender and HUD regulations do not create a private right of action).

Other courts have recognized breach of contract claims based on a failure to comply with HUD regulations where the mortgage instrument expressly conditions

7

the mortgagee's right to accelerate or sell the property on compliance with HUD regulations.  See In re Silveira, No. 11-44812-MSH, 2013 Bankr. LEXIS 1904, at *45 (Bankr. Mass. May 3, 2013) ("While these [HUD] regulations do not provide a mortgagor with a private right of action … if they are incorporated into the various loan documents . . . they become enforceable by the parties to the loan documents."); BAC Home Loans Servicing, LP v. Taylor, 986 N.E.2d 1028, 1033–34 (Ohio Ct. App. 2013); Squire v. Va. Hous. Dev. Auth., 758 S.E.2d 55, 59–61 (Va. 2014); Mathews v. PHH Mortg. Corp, 724 S.E.2d 196, 202 (Va. 2012); see also Coll. Loan Corp. v. SLM Corp., 396 F.3d 588, 599 n.9 (4th Cir. 2005) ("[W]e have specifically recognized that, absent preemption, an injured plaintiff may sue under state law seeking redress for a violation of a federal regulation.").

Under Georgia law, a condition precedent to a right or obligation set out in a contract must be satisfied in order for the right to accrue.  See Brogdon v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1355 (N.D. Ga. 2000).  In determining whether a contract contains a condition precedent, Georgia courts look at the language of the agreement itself.  Conditions precedent, although "not favored in interpreting contracts, are created by language such as 'on condition that,' 'if,' and 'provided,' or by explicit statements that certain events are to be construed as conditions precedent."  Massih v. Jim Moran & Assocs., Inc., 542 F. Supp. 2d 1324, 1330 ( M.D. Ga. 2008); see Munson v. Strategis Asset Valuation & Mgmt.,

8

Inc., 363 F. Supp. 2d 1377, 1382 (N.D. Ga. 2005). Additionally, to the extent that a regulation is incorporated by reference into a contract, including as a condition precedent, it must be referenced in a way that establishes a "reasonably clear and ascertainable meaning." Bowman v. Walnut Mountain Prop. Owners Ass'n, Inc., 553 S.E.2d 389, 393 (Ga. Ct. App. 2001); see Goldman v. Vinson, 535 S.E.2d 305, 307 (Ga. Ct. App. 2000).

In view of Georgia's general rule that powers of sale in deeds are to be construed strictly, see Ga. Code Ann. § 23-2-114, we believe Georgia courts would hold that HUD regulations clearly referenced in a deed as conditions precedent to the power to accelerate and the power of sale could form the basis of a breach of contract action. The deed at issue here provides: "This [deed] does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." DE 5-2 at 6. Taken in context, this language clearly makes compliance with HUD regulations a condition precedent to the bank's right to accelerate the debt or exercise the power of sale. Accordingly, we believe that Georgia courts would enforce the terms of the contract as written and decide that Bates has asserted a duty that Chased owed her.[5]

---

[5] Chase's argument that it did not bargain for such a condition because it did not draft the form HUD deed used here is unavailing. The parties chose to enter into this agreement as part of a HUD program, and in doing so, they agreed to use the standard note and deed at issue, including the language relevant here. Prohibiting a breach of contract cause of action in these circumstances under this theory would render meaningless essentially the entire agreement that Chase voluntarily signed, a result that is to be avoided in contract interpretation. See Mathews,

Contrary to Chase's argument, Bates's breach of contract claim is not barred by the preexisting duty rule. Although promising to do something one is already obligated to do will not provide sufficient consideration for a promise under Georgia law, a promise to perform a preexisting duty owed to a third person, not a party to the contract is sufficient consideration and can give rise to an enforceable obligation. See Restatement (Second) of Contracts § 73 cmt. d. (1979) ("[T]he tendency of the law has been simply to hold that performance of contractual duty can be consideration if the duty is not owed to the promisor."). Georgia courts have not dealt directly with situations in which the preexisting duty is owed to the government or the public at large; rather, most cases address preexisting duties already owed to the promisor. See, e.g., Glisson v. Global Sec. Servs., LLC, 653 S.E.2d 85, 87 (Ga. Ct. App. 2007) ("[A] promise to perform a preexisting contractual obligation does not constitute consideration for a new agreement.").

We believe the facts here do not implicate the rationale of the pre-existing duty rule because additional consideration was provided by both parties, and Chase did not previously owe a duty to Bates that Bates could enforce. As Chase has argued, its preexisting duty to comply with HUD regulations was owed to the government, not Bates, and Bates had no right to enforce this promise outside of

---

724 S.E.2d at 200.

10

the contract.  Thus, a contractual obligation to comply with the regulations

existed.[6]

The issue remains as to what type of relief is possible.  Bates acknowledges

that a violation of a condition precedent to the power to accelerate and power of

sale cannot, in and of itself, create contractual liability.  Instead, for a mortgagor

like Bates to succeed, she must show that the premature or improper exercise of

some power under the deed (acceleration or sale) resulted in damages that would

not have occurred but for the breach.[7]

In cases such as this, where there was no actual exercise of the power of

sale,[8] the only possible harm must be traced back to the allegedly unauthorized

acceleration of the note.  Perhaps this might give rise to damages in some

circumstances; here, any such claim is negated by the generous reinstatement

---

[6]  Because we do not reach the question of whether Chase actually breached the duty owed to
Bates, we need not decide whether strict compliance with the regulations is required.

[7] Although Bates correctly cites to Roylston v. Bank of Am., N.A., 660 S.E.2d 412, 417 (Ga. Ct.
App. 2008), for the proposition that "the debtor may either seek to set aside the foreclosure or
sue for damages for the tort of wrongful foreclosure," this discussion is not in the context of a
breach of contract claim, and it does not obviate the need for the mortgagor to prove all elements
of a breach of contract claim.  Even in Roylston, the court limited recovery to "the full difference
between the fair market value of the property at the time of the sale and the indebtedness to the
seller if the fair market value exceeded the amount of the indebtedness."  Id.

[8] Chase never foreclosed on the property or executed its power of sale under the deed.  Bates has
not set forth any contractual damages that could have been caused by the mere threat of
exercising the power of sale.  Instead, it appears such alleged damages fall under Bates's claim in
tort for attempted wrongful foreclosure.  Additionally, it is important to note that Bates's
complaint does not seek injunctive relief against any future foreclosure.

11

provision contained in the deed.  Pursuant to section 10 of the deed:

> Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.
> DE 5-2 at 6.

Because all Bates must do, even now, is simply pay all of the outstanding monthly payments and associated fees admittedly owed, Chase's exercise of the power to accelerate the note could not have caused her harm, and therefore, she has failed to substantiate two important elements of her claim for breach of contract: causation and damages.[9]  To reiterate, although we recognize that HUD regulations are enforceable terms of the contract, because Bates has failed to put forward any evidence of damages caused by the purported breach of these contract terms or seek any cognizable relief, we conclude that summary judgment properly was

---

[9] To the extent Bates premises her breach of contract action on Chase's refusal to accept her payments because they were not paid with certified funds, we find the contract to be silent on the issue, and Georgia law makes clear that a promise to pay, in the form of a personal check, need not be accepted as payment, absent waiver.  See Holland v. Mut. Fertilizer Co., 70 S.E. 151 (Ga. Ct. App. 1911), disapproved on other grounds by White v. Turbidy, 183 S.E.2d 363 (Ga. Ct. App. 1971).  Likewise, once foreclosure was pending and the note had been accelerated, neither the deed nor the HUD regulations required acceptance of partial payments.  See 24 C.F.R. § 203.556.

granted against Bates on her breach of contract claims.

II.    Trespass

As explained above, Bates conceded that she was in default at all relevant points in time, even if Chase had properly credited her account with her attempted payments.[10]  Georgia law recognizes that "[t]he common law right to the exclusive use and possession of property may be modified by agreement, in which the landowner grants permission to enter his property under certain circumstances." Tacon v. Equity One, Inc., 633 S.E.2d 599, 604 (Ga. Ct. App. 2006).  Under the deed here, "Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default."  Because Bates was admittedly in default, any visits by Chase's agents to the property were permitted by contract and no action for trespass may lie.

III.    Wrongful Attempted Foreclosure

Bates contends the district court erred in granting judgment against her on her attempted wrongful foreclosure claim.  Under Georgia law, to "recover damages for a wrongful attempted foreclosure[, the plaintiff must prove] a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication."  Aetna Fin. Co. v. Culpepper, 320 S.E.2d 228,

---

[10] Even when Bates submitted her late payments, she failed to include the associated late fees.

13

232 (Ga. Ct. App. 1984).

Here, the only published information about Bates's financial condition was that she failed "to pay the indebtedness as and when due and in the manner provided in the Note and Deed to Secure Debt." The publication also mentions that "the debt remains in default." Bates admits that she failed to pay her debts when due, as all of her attempted payments were late. Additionally, Bates never even attempted to pay the entire amount owed, including late fees, and therefore, she admittedly was in default.

Bates appears to argue that the mention of an allegedly invalid foreclosure sale is sufficient to give rise to liability. This information about Chase's intent to sell the property, however, is not a statement of the debtor's financial condition, but rather a statement of Chase's future actions. At any rate, Chase believed it was entitled to foreclose on the property at the time, and Bates in her deposition attributed the problems with Chase only to Chase's inability to fully keep track of her payments and communicate her payment status to her. This negates any evidence of <u>knowing</u> falsity of the statement.

IV.    RESPA

Bates also contends that the district court erred by granting summary judgment against her on her RESPA claim because at a minimum, a factual dispute exists as to whether Chase's response was sufficient. Under RESPA, 12 U.S.C.

14

§ 2605(e)(2) (2010), a lender must respond to a qualified written request from a borrower within 60 days of receipt.  In responding, the lender must "after conducting an investigation, provide the borrower with a written explanation or clarification that includes—(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower."  Id. § 2605(e)(2)(B).

In its response, Chase explained that it had returned the funds from Bates's September and November payments because they were not certified funds and were inadequate to cure the default.  This explanation, based on the research by Chase, "provide[d] the borrower with a written explanation . . . of the reasons for which the servicer believes the account of the borrower is correct."  12 U.S.C. § 2605(e)(2)(B)(i) (emphasis added).  Although Bates was confused and/or unsatisfied with this answer, the information provided an explanation to Bates as to what happened to her September payment and provided her with contact information for further support.  This transparency and facilitation of communication is the goal of RESPA, and the breakdown in communication between Bates and Chase as to the details of the September payment's return, albeit in part due to the fault of both parties, did not cause Bates damages.

15

To the extent Bates contends she raised a new question, warranting a new response, in her second request, this claim fails both because the prior response was adequate and because again there were no damages as a matter of law stemming from an inadequate response.  The prior response from Chase clearly explained that the funds had been returned, although it did not explain how.  This outstanding question was answered by receipt of the March replacement check, refunding the September payment.  Additionally, Bates's purported confusion as to why she received the replacement check did not cause her any demonstrable harm, and she has not explained why her lack of knowing why she received the check in March somehow caused her additional damages or prevented her from taking some important action.[11]

Because all of Bates's claims fail as a matter of law, the district court's grant of summary judgment in favor of Chase on all claims is

AFFIRMED.

---

[11] Notably, the parties were already in the midst litigation at this point in time.

16