[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14511
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-01109-TCB

ANTHONY SHEELY, JR.,
FELICIA A. BOYD-SHEELY,

Plaintiffs - Appellants,

versus

BANK OF AMERICA, N.A.,
THE BANK OF NEW YORK MELLON,
f.k.a. The Bank of New York, as Trustee For the Certificate-Holders of CWALT, Inc.,
Alternative Loan Trust 2007-19 Mortgage Pass-Through Certificates, Series 2007-19,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 30, 2018)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Anthony Sheely and Felicia Boyd-Sheely (collectively, the "Sheelys") appeal the grant of summary judgment on their complaint against Bank of America, N.A. ("BANA") and the Bank of New York Mellon ("BNY") arising out of their attempts to obtain a modification of their mortgage loan. The Sheelys maintain that summary judgment was inappropriate because they presented sufficient evidence that BANA committed fraud during the modification process and that both BANA and BNY breached a provision of the security deed requiring notice of default and acceleration of the debt. Because we agree with the district court that no genuine issue of material fact exists in the record, we affirm.

## I. Background

*A.    Factual Background*

The Sheelys own a home in Ball Ground, Georgia. On May 7, 2007, Anthony took out a $461,000 loan from Countrywide Home Loans, Inc. ("Countrywide"), to refinance their mortgage. At the same time, the Sheelys executed a security deed, which was later assigned to BANA and then to BNY. The security deed allows the non-judicial foreclosure sale of the property in the event of an uncured default.

Soon after refinancing their home loan, the Sheelys began experiencing financial hardship. Anthony lost his entire trucking business when the automotive industry crashed in late 2007. When they contacted Countrywide in October 2007 about their financial difficulties, they were told they needed to be 90 days behind on their mortgage to qualify for assistance. So they stopped making their monthly payments, defaulted, and then called back in January 2008. Countrywide said they were eligible for modification but should wait to receive a letter and, in the meantime, could begin an interim repayment plan to avoid foreclosure. The repayment plan called for the Sheelys to make higher monthly payments over five months to make up the past-due amounts.

BANA began servicing the loan after Countrywide merged with BANA in early 2008. The Sheelys could not make the higher payments under the repayment plan, so they contacted BANA, which, like Countrywide, told them they needed to be 90 days behind to qualify for assistance. BANA also said that, because their past payments had been suspended by the repayment plan, the relevant 90-day period would not begin to run until the end of February 2008.

Because the Sheelys did not comply with the repayment plan, Countrywide sent them a notice of default and acceleration of the debt in January 2008. BANA

sent another notice of default and acceleration in April 2008.[1]  To stave off the threatened foreclosure, the Sheelys attempted to make their normal payments a few times, but the payments were returned as insufficient.  They have not made any payment on the loan since May 2008.

From 2008 to 2013, the Sheelys diligently attempted to obtain a loan modification.  But, they maintain, BANA made it impossible for them to do so by repeatedly misrepresenting the status of their modification applications, losing documents, or otherwise stymying their efforts.  BANA, for its part, asserts that it evaluated the Sheelys' loan for modification in good faith, and that it in fact approved the Sheelys for modification multiple times.  However, according to BANA, modification was denied because the Sheelys failed to make the trial payments, failed to return documentation, or otherwise did not qualify for modification.

BANA supported its contentions before the district court with a declaration from Ryan Dansby, Operations Team Manager on the Mortgage Resolution Team for BANA, along with supporting documents.  This evidence showed the following:  BANA approved the Sheelys for a modification in July 2008 and sent

---

[1] The Sheelys' brief asserts repeatedly that they did not receive these notices, but that claim is at least partly contradicted by Felicia's own declaration, *see* Doc. 35 ¶¶ 11–12 (stating that they were sent the January 2008 letter by Countrywide and that they "attempted to make payments on April 9, 2008 and May 27, 2008 due to the threatening of foreclosure letters from Countrywide and BANA").  In any event, we find that this fact is not material to our resolution of the Sheelys' claims, as explained more fully below.

them an approval letter. BANA declined the modification in September 2008 after the Sheelys failed to return certain documents. Then, in March 2010, BANA approved the Sheelys for a trial modification under the Home Affordable Modification Program ("HAMP") and sent a letter stating that they needed to make three trial mortgage payments and return certain documents. Again, BANA denied the modification when the Sheelys did not make the trial payments or return the documents. Finally, in July 2012, BANA approved the Sheelys for a modification under a new program—through which they could obtain a principal reduction of over $250,000—created as a result of Department of Justice litigation against BANA and other servicers. In an approval letter dated July 11, 2012, BANA offered the modification and directed them to make three trial payments. BANA denied the modification when the Sheelys did not make any trial payments.

The Sheelys deny receiving any of this correspondence, and they claim that BANA never intended to grant them a modification. Pointing to several years of phones calls and other correspondence with BANA, as relayed by Felicia in a declaration, they assert that BANA strung them along with false hope for a modification and so prevented them from taking other actions to save their home. According to the Sheelys, BANA represented that the Sheelys were eligible for modification, only to defer a decision repeatedly by claiming it needed more time

to process their application or that the Sheelys needed to resubmit their materials or restart the process altogether.

At some point, BANA referred the Sheelys' loan to a law firm to conduct a non-judicial foreclosure sale. In December 2012, the Sheelys received a notice of acceleration and foreclosure sale and a notice of sale under power from McCurdy & Candler, LLC. The notices identified BANA as the servicer and BNY as the secured creditor. Before the foreclosure sale occurred, however, another servicer took over from BANA, and it does not appear from the record that any foreclosure sale has since occurred.

## B. Procedural History

In February 2015, the Sheelys sued BANA for breach of contract, fraud, wrongful foreclosure, and intentional infliction of emotional distress and BNY for breach of contract and wrongful foreclosure. The Sheelys also sought punitive damages, attorney's fees and costs, and injunctive relief against foreclosure. After removal of the complaint to federal court, the district court dismissed the claim for wrongful foreclosure and the request for injunctive relief.

In moving for summary judgment, the defendants relied mainly on Dansby's affidavit and supporting documentation. The Sheelys relied on Felicia's declaration. A magistrate judge issued a report and recommendation ("R&R") recommending that summary judgment be granted on the claims for fraud and

6

intentional infliction of emotional distress but denied on the claim for breach of contract. After both parties submitted objections to the R&R, the district court granted the defendants summary judgment in full. The Sheelys now appeal.

## II.  Standard of Review

We review a district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015). "Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quotation marks omitted). There is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). But "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–250 (citations omitted). We may affirm the district court's judgment on any ground supported by the record, even if that ground was not relied upon by the district court. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

## III.  Discussion

The Sheelys challenge the grant of summary judgment on their claims for breach of contract and fraud. We address each in turn. They have abandoned their

claim for intentional infliction of emotional distress by failing to address it in their appellate briefs. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (issues not raised on appeal are abandoned).

## A. Breach of Contract

The district court concluded that the Sheelys' breach-of-contract claim failed because the defendants sent notices of default and acceleration in 2008 that complied with their obligations under the security deed. The Sheelys respond that the 2008 notices—which they deny receiving—are irrelevant and that the notices in late 2012 and early 2013 are non-compliant. We affirm the grant of summary judgment on this claim, but for different reasons than the district court.

To prove a claim for breach of contract under Georgia law, a plaintiff must show (1) a valid contract, (2) a material breach of its terms, and (3) resultant damages to the party who has the right to complain about the breached contract. *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014).

In *Bates*, we explained that "a violation of a condition precedent to the power to accelerate and power of sale cannot, in and of itself, create contractual liability." *Id.* at 1132. Instead, for a mortgagor to succeed on a claim for breach of contract, "she must show that the premature or improper exercise of some power under the deed (acceleration or sale) resulted in damages that would not have occurred but for the breach." *Id.* at 1132–33. Put differently, where the defendant

8

has yet to exercise the power of sale, the plaintiff must trace back the harm to the allegedly unauthorized acceleration of the note. *Id.* at 1133.

We recognized in *Bates* that an unauthorized acceleration of the note "might give rise to damages in some circumstances," but we ultimately held that any such claim by Bates (the plaintiff) was negated by the security deed's "generous reinstatement provision." *Id.* That provision stated that the plaintiff had the right to be reinstated upon paying all amounts due, even after foreclosure proceedings had been initiated. *Id.* Thus, we held that because Bates could simply pay her outstanding debt, the defendant's "exercise of the power to accelerate the note could not have caused her harm, and therefore, she ha[d] failed to substantiate two important elements of her claim for breach of contract: causation and damages." *Id.* We therefore affirmed the grant of summary judgment against Bates. *Id.*

*Bates* controls here. Because there is no evidence that the power of sale has been exercised, the Sheelys must trace their harm back "to the allegedly unauthorized acceleration of the note." *See id.* But, like the plaintiff in *Bates*, the Sheelys "ha[ve] not set forth any contractual damages that could have been caused by the mere threat of exercising the power of sale." *See id.* at 1133 n.8. Moreover, the security deed in this case contains a reinstatement provision that is materially similar to the provision in *Bates*, which "negate[s]" the Sheelys' claim arising from

9

the allegedly unauthorized acceleration of the note.[2] *See id.* at 1133.  Because the Sheelys could, even now, return to a pre-acceleration position by paying all outstanding payments and associated fees, the "exercise of the power to accelerate the note could not have caused [them] harm, and therefore, [they] ha[ve] failed to substantiate two important elements of [their] claim for breach of contract: causation and damages." *See id.*

Accordingly, summary judgment was properly granted against the Sheelys on their breach-of-contract claim.  Because we affirm the grant of summary judgment on an alternative ground, we need not and do not address the Sheelys' arguments about whether the defendants can rely on the 2008 notices, whether those notices were actually sent or received, or whether evidence in the record establishes a legal relationship between BANA, BNY, and Countrywide.

*B. Fraud*

The Sheelys argue that a reasonable jury could find that BANA committed fraud based on "the long history of mixed-message communications from BANA, culminating in BANA's misrepresentation that it was considering the Sheelys' application for modification with principal-forgiveness in July 2012 when it had no apparent present intention to do so." Sheelys' Initial Br. at 14.  They maintain that

---

[2] Before the district court, the Sheelys asserted that *Bates* was not controlling because their deed did not have a "generous reinstatement provision" like the deed in *Bates*.  But for that assertion, they cited only the December 2012 foreclosure notice sent by McCurdy & Candler, not the deed itself.  And a comparison between the two provisions at issue shows that they are materially similar. *Compare Bates*, 768 F.3d at 1133, *with* Doc. 1-3 at 8, ¶19.

10

a jury could find that "BANA never intended to give the Sheelys' modification application due consideration but instead intended to lure them so deep into default that foreclosure would be their only option." *Id.* According to the Sheelys, BANA did so by "advising them to fall further behind on their payments, misrepresenting the status of their modification applications of its review thereof, and continually and repeatedly deferring decision on those applications, until the arrears became too astronomical to cure." *Id.* at 17.

"Under Georgia law, which applies in this diversity action, the tort of fraud consists of five elements: (1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003) (quotation marks omitted). For a false representation by a defendant to be actionable, it "must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events." *Id.* (quotation marks omitted). Nevertheless, a promise made without a present intent to perform can be a material misrepresentation sufficient to support a cause of action for fraud. *Lumpkin v. Deventer N. Am., Inc.*, 672 S.E.2d 405, 408 (Ga. Ct. App. 2008).

We conclude that the district court properly granted summary judgment on the Sheelys' fraud claim.[3]  The Sheelys' contention that BANA induced them to default through fraud—by instructing them that they needed to be 90 days behind to qualify for modification—is not supported by the record.  There is no evidence that these statements were false or misleading.  *See Ellis*, 318 F.3d at 1027.  Nor were the statements coupled with a promise of modification, such that it could be inferred from BANA's later actions that it made a promise without a present intent to perform.  *See id.*  Rather, the instructions, as recounted in Felicia's declaration, were that the Sheelys would be eligible for modification after three months, not that they were guaranteed modification if they failed to pay for three months.  In sum, no reasonable jury could conclude that BANA committed fraud by inducing the Sheelys to default.

As for the other evidence of misrepresentations, miscommunications, delays, lost documents, and the like, we agree with the district court that, even assuming these facts are true and drawing all reasonable inferences in the Sheelys' favor, "a fact-finder would have to rely on speculation and unfounded conjecture to find in favor of the Sheelys" on the fraud claim.  Doc. 53 at 18.

---

[3] In reaching this conclusion, we assume, as the Sheelys contend, that the conversations with BANA representatives that are recounted in Felicia's declaration are fully admissible as statements of a party opponent.  *See* Fed. R. Evid. 801(d)(2)(D).  We therefore need not consider whether the district court improperly excluded some of this evidence as inadmissible hearsay.

12

Significantly, the Sheelys' fraud claim, as presented on appeal, rests on an inference that BANA never intended to grant a loan modification and that its various communications with the Sheelys about a loan modification were, in essence, all for show.  But BANA presented evidence that it reviewed and approved the Sheelys for modification multiple times.  BANA showed that it mailed letters notifying the Sheelys that they were approved to begin trial modifications on three separate occasions—in July 2008, March 2010, and July 2012—but that it denied the modifications when the Sheelys failed either to make the trial payments or to return the required documentation.  BANA also presented evidence that it reviewed the Sheelys for modification in 2013 but that it determined that it could not alter the terms of their loan within allowable limits.

In response to this evidence, the Sheelys have not produced any "significantly probative" evidence of their own to support their belief that BANA misrepresented its willingness to consider them for a modification or that these modification offers were not genuine.  *See Anderson*, 477 U.S. at 249–50; *Sec. & Exch. Comm'n v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014) ("Speculation or conjecture cannot create a genuine issue of material fact, and a mere scintilla of evidence in support of the nonmoving party cannot overcome a motion for summary judgment." (quotation marks omitted)).

13

First, although the Sheelys "vehemently deny" receiving BANA's modification offers, that denial does not create a genuine issue of fact about whether such correspondence was in fact sent. And whether or not the Sheelys received these letters does not bear on BANA's intent in sending them.

Second, while Felicia's declaration states that on July 20, 2012, during one of the purported trial periods, a BANA representative told them they needed to restart the application process, this evidence does not create a genuine issue of material fact. To be sure, the July 20 statements are inconsistent with the statements in the July 11 approval letter. But without some additional information, and even against the backdrop of previous communications, it's not reasonable to infer that the inconsistency is because BANA either lied about the prior approval or "lied . . . about the need to re-start the application process in order to cause them to become ineligible for the highly favorable modification program." Sheelys' Initial Br. at 38. On the current record, these inferences are much too speculative to create a genuine issue of material fact as to BANA's intent to deceive in misrepresenting the status of their modification. *See Monterosso*, 756 F.3d at 1333.

Finally, the Sheelys' attempt to bolster their claim by reference to the "public record" is unavailing. The Sheelys cite the declarations of six former BANA employees that were prepared for litigation in another case. Although these

14

declarations were attached to the complaint, they were not offered as evidence in this case, nor, even if they were, are they directly relevant to the Sheelys' interactions with BANA.  Though these declarations may have given the Sheelys reason to suspect that BANA was not dealing with them fairly and in good faith, the Sheelys have not sufficiently supported that belief with evidence from which a reasonable jury could conclude that BANA strung them along with no intent to grant a permanent loan modification.

In sum, we cannot conclude that genuine issues of material facts exist as to whether BANA committed fraud as alleged by the Sheelys.  We therefore affirm the district court's grant of summary judgment on this claim.

## IV. Conclusion

For the reasons stated, we affirm the district court's grant of summary judgment on the Sheelys' complaint against BANA and BNY.

**AFFIRMED**.

15