68041. AETNA FINANCE COMPANY v. CULPEPPER.

QUILLIAN, Presiding Judge.
Plaintiff appellee Myrtice L. Culpepper and her son Larry purchased a 1978 dump truck in November 1981 for $36,000 from Quality GMC trucks in Columbus. They put $4,000 in cash down and applied for a $34,000 loan from appellant Aetna Finance Company (Aetna). Aetna appraised the dump truck as worth $18,000 and, for additional collateral, paid off the first lien on Mrs. Culpepper's residence for $1,200 and took a first mortgage on the home and the dump truck. A note to Aetna for $35,000 and a security agreement covering the

dump truck were executed by both Culpeppers, and Mrs. Culpepper executed a deed to secure debt on her real property. The foreclosure provision in the security deed was specifically explained to Mrs. Culpepper and she was asked to initial and date it to indicate her comprehension that in the event of a default on the loan payments, Aetna was entitled to foreclose on her home. The $35,000 loan was to be paid in monthly installments for two years, then to balloon and the balance become due in full at the end of two years, as the Culpeppers anticipated leasing the dump truck for a substantial profit to be split between them.

The first payment of $1,000 was due on December 6, 1981, but due to bad weather and other factors the Culpeppers had paid only $700 by March 12, 1982, when the truck was extensively damaged in a collision and required repairs costing $3,300. This loss was covered by insurance, except for $369 which Aetna paid to Quality GMC for the repairs. When no loan payment was made in April, Aetna's manager John Hanson telephoned Larry Culpepper to tell him that the loan was in default and Aetna had the legal right to repossess the collateral. Hanson also told Culpepper "[t]hat he could voluntarily surrender the truck and when it came back from being repaired that [Aetna] would try to sell it for the best price and work out an arrangement for him to pay the balance so that it would not affect Mrs. Culpepper's real estate." Larry Culpepper testified that he surrendered the dump truck and signed an acknowledgment of voluntary delivery so that the truck could be sold and the debt "annihilated."

On May 14, 1982, following repair of the truck, Aetna sent a notice of repossession to both Culpeppers, notifying each of Aetna's intent to sell the truck at public sale on June 4, 1982. The public sale drew only one tentative bid of $21,000 from Quality GMC, which was quickly withdrawn. Immediately thereafter Hanson wrote Mrs. Culpepper to tell her what had happened and advised her and Larry that the truck would be sold at private sale to the highest bidder after Aetna received three bids. Quality GMC assisted in the sales effort by placing the truck on its lot at no cost where its salesmen showed it to all their regular customers. Advertisements were placed in two regional trucking magazines and nationally within the Aetna organization for several months, and Hanson also contacted eight other truck dealerships in Georgia and Alabama seeking bids. Three bids of under $20,000 were received but rejected by Aetna as too low. On August 23, 1982, Quality GMC made another tentative bid of $25,000 contingent upon a resale to a specific customer, which was accepted by Aetna. After painting, repairs, installation of air conditioning and general cleaning, Quality GMC sold the truck for $30,000 realizing a profit of 5.75%, which was shown to be comparable to three other sales made that year.

The entire $25,500 was credited to the Culpepper's outstanding loan account balance of $48,424.57 on September 1, leaving an unaccelerated balance of $22,924.47, not including the sum of $290 which Aetna paid to insure the real property, although the deed to secure debt required that such insurance be maintained by Mrs. Culpepper. When attempts to arrange a new loan with an extended payment schedule were unsuccessful, Aetna notified Mrs. Culpepper on December 6, 1982, a year after the default in the first payment, that the account had been accelerated, that $16,473.72 was then due and if not paid Aetna would begin foreclosure proceedings. First notice of foreclosure was published on December 10. On December 22, Mrs. Culpepper filed the instant lawsuit, and on December 28 she filed a voluntary petition for bankruptcy which stayed Aetna's foreclosure proceedings.

Mrs. Culpepper sought $1,000,000 in actual damages and $4,000,000 in punitive damages and attorney fees, all based upon the loan transaction. Her complaint alleged (1) the intentional infliction of emotional distress; (2) sale of the truck in a commercially unreasonable manner; (3) usury; (4) wrongful foreclosure; and (5) violation of the Georgia Motor Vehicle Sales Finance Act. Aetna denied liability and both parties moved for summary judgment. The trial court ruled that the interest rate on the loan was not usurious; that the Motor Vehicle Sales Finance Act was inapplicable; that the June 4, 1982 notice of private sale did not comply with the notice requirement of the security deed, but that Aetna was not prohibited from initiating foreclosure proceedings despite the improper notice; and that the issues remaining to be tried were the alleged intentional infliction of emotional distress, wrongful foreclosure, and punitive damages and attorney fees.

During pretrial discovery Mrs. Culpepper moved to have the original ledger card in the Atlanta office produced for inspection by her expert. Aetna resisted on the grounds of relevance and protection of the original, but after a hearing the court ordered its production with certain precautionary safeguards. The Culpeppers' expert was unable to appear for deposition by Aetna until the day before the trial, at which time Aetna learned that he would contend at trial that one of the figures on the bids for the truck had been altered after filing of the action, as had certain other records in Aetna's possession.

At trial Mrs. Culpepper contended through her expert that comparison of the original ledger card on the account with the copy provided by Aetna showed that several additional entries had been made, and that a loop had been added to the figure "7" to make it look like a "2" in one of the bids. Aetna's Columbus manager John Hanson, its representative at trial and chief witness, had been custodian of this card and was solely responsible for its preparation. Hanson testified

that he made all the entries on the card contemporaneously with the date recorded, and denied that there was ever a bid of $27,000 for the truck. He also denied that he had harassed the Culpeppers or used abusive language about surrendering the truck or foreclosure on the real property, as alleged. The trial court denied Aetna's motion for directed verdict, and the jury returned a verdict of $50,000 actual and compensatory damages, $20,000 punitive damages and $35,000 attorney fees, on which judgment was entered July 19, 1983.

Aetna filed a motion for judgment n.o.v. or for new trial, which was pending when Mrs. Culpepper filed a second action concerning the same loan against IT&T Consumer Financial Corporation (ITTCFC), Aetna's parent company, seeking $6,000,000 in damages. In preparing to defend that suit, Aetna's counsel discovered in ITTCFC's files another copy of the ledger card which varied substantially from the original introduced at the instant trial; it contained a bid for $27,000 where $25,000 was on the original and did not contain two other entries. Aetna reported the existence of this new card to the court and disavowed Hanson's conduct by filing an amended motion for new trial on October 18, 1983 on grounds of this newly discovered evidence. The motion averred that after investigation Hanson had been fired for cause on October 14, as his employment contract specifically required that he maintain truthful and accurate records. At a hearing on this issue Aetna argued that had it known that Hanson had materially altered the ledger card it would have defended on the basis that he was acting outside the scope of his employment to avoid liability. The motions were denied and Aetna brings this appeal.

1. Aetna contends first that there was no evidence to support a claim of wrongful foreclosure; that the trial court therefore erred in submitting this issue to the jury; and because that error affected the general verdict it must be reversed. Mrs. Culpepper argued at trial that the sum sought by Aetna was based on an incorrect computation of the interest rate and that the truck was not sold in a commercially reasonable manner. However, she admitted that no full payments had been made on the loan, and Aetna submitted evidence showing that even allowing for deduction of the purportedly excessive rate and credit for the full amount for which the truck was sold, there would still be a balance due and owing on December 6, 1982, which would clearly entitle Aetna to initiate foreclosure proceedings. Further, Hanson's testimony that insurance on the real property was in arrears and was paid by Aetna was uncontradicted.

"[W]here the debt [is] secured by a security deed and note giving the creditor the right and power to advertise and sell the security for the payment of the balance due on the debt upon default of the debtor, the creditor commits no libel or tortious act by exercising the right granted in contract. [Cits.]" *Rome Bank & Trust Co. v. Kerce,*

140 Ga. App. 596, 600 (1) (231 SE2d 464); *Smith v. C. & S. Financial Corp.*, 245 Ga. 850 (3) (c) (268 SE2d 157). The failure to pay insurance premiums when due also authorized the exercise of the power of sale. *Bozeman v. Horton*, 245 Ga. 188 (2) (263 SE2d 922); *Andrews v. Holloway*, 140 Ga. App. 622 (3) (231 SE2d 548).

Moreover, since Mrs. Culpepper filed bankruptcy proceedings, thereby preventing any sale of the property, she suffered no legal injury and proved no actual damages. The measure of damages where a wrongful foreclosure has occurred is "the full difference between the fair market value of the property at the time of the sale and [the] indebtedness to the seller if the fair market value exceeded the amount of the indebtedness. [Cit.]" *Langley v. Stone*, 112 Ga. App. 237, 239-40 (2) (144 SE2d 627) (Overruled to the extent that it indicates that inadequacy of price alone presents a cause of action); *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327 (270 SE2d 867). Those decisions upon which Mrs. Culpepper relies to support her contention that she could recover damages for a wrongful *attempted* foreclosure require a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication. See, e.g., *Sale City Peanut &c. Co. v. Planters & Citizens Bank*, 107 Ga. App. 463 (130 SE2d 518); *Hodsdon v. Whitworth*, 153 Ga. App. 783 (2) (266 SE2d 561); *Mayo v. Bank of Carroll County*, 157 Ga. App. 148 (2) (276 SE2d 660). However, no such cause of action arises where the foreclosure notice is truthful when published but there is a later determination that no debt was owing. *Napier v. Jordan*, 52 Ga. App. 585 (1) (183 SE 854). The notice published by Aetna stated that "there has been a default in the payment of monthly installments . . .," a fact admitted by Mrs. Culpepper. Therefore, having neither alleged nor proved a claim for libel, nor any special damages arising from a false publication, Mrs. Culpepper was not entitled to recover under this theory and the trial court erred in failing to direct a verdict in Aetna's favor on this issue. *Rome Bank &c. Co. v. Kerce*, 140 Ga. App. 596 (1), supra.

2. Mrs. Culpepper asserts for the first time on appeal that Aetna's attempted foreclosure was wrongful because ITTCFC owned the loan on December 6, 1982, when she was sent the notice. "Matters to be considered on appeal, however, are limited to those which were urged before the trial court. [Cits.]" *Ga. Retail Assn. v. Ga. Public Service Comm.*, 165 Ga. App. 208, 209 (300 SE2d 544). Since Mrs. Culpepper never presented evidence or argued this question before the jury, Aetna did not have the opportunity to meet or rebut it, and there is no ruling of the trial court for review on appeal. See *Evans v. Dixie Fasteners*, 162 Ga. App. 74 (2) (290 SE2d 172); *Brown v. Quarles*, 154 Ga. App. 350 (4) (268 SE2d 403); *Sowell v. Douglas*

*County E.M.C.*, 150 Ga. App. 520 (1) (A) (258 SE2d 149).

3. We also agree with Aetna that the trial court erred in granting partial summary judgment and instructing the jury that because improper notice was given of the private sale, Aetna "did not proceed in a commercially reasonable manner in the disposition of this truck." The court ruled that the June 4 letter stating that Aetna would sell the truck at a private sale to the highest bidder after three bids were obtained did not comply with the terms of the security agreement because it did not specify the date after which the truck would be sold. However, the language of this provision of the document recites that "Notice mailed to the debtors . . . at least ten days before . . . the date after which private sale of the collateral will take place shall constitute reasonable notice to the debtor."

The Uniform Commercial Code requires "reasonable notification," but allows the parties to establish by contract the meaning of reasonable notification. OCGA §§ 11-9-501; 11-9-504 (3). The parties here stipulated through the security agreement that notice mailed ten days before the date after which a private sale would take place constituted reasonable notification. Thus the debtors knew that no sale would take place until ten days after the date of the mailing, regardless of whether the date was specified in the notice. There is no question that Mrs. Culpepper received the notice in sufficient time to take appropriate steps to protect her interest by taking part in the sale or challenging any aspect of it, if she so desired, as the truck was not sold until 87 days after notice. See *Geoghagan v. Commercial Credit Corp.*, 130 Ga. App. 828 (2) (204 SE2d 784); *Barbree v. Allis-Chalmers Corp.*, 250 Ga. 409 (1) (297 SE2d 465). Indeed, Aetna introduced evidence that Mrs. Culpepper called Quality GMC Trucks on several occasions between June 4 and September 1 questioning the status of the sale of the truck, and that she also contacted the lessor of the truck about purchasing it.

We conclude that the notice given was in compliance with the terms of the security agreement, and served all the purposes intended by the notice provisions of OCGA § 11-9-504 (3) as well. Therefore, the trial court's grant of partial summary judgment to Mrs. Culpepper on the ground that the June 4 letter was not proper notice, which resulted in the prejudicial instructions to the jury that Aetna did not proceed in a commercially reasonable manner, also requires reversal for a new trial. Compare *Slaughter v. Ford Motor Credit Co.*, 164 Ga. App. 428 (296 SE2d 428); *Ga. Grain & Stillage Co. v. First Ga. Bank*, 142 Ga. App. 709 (236 SE2d 913); *Granite Equip. Leasing Corp. v. Marine Dev. Corp.*, 139 Ga. App. 778 (1) (230 SE2d 43).

4. Having determined that the case must be reversed on the above grounds, it is unnecessary for us to rule on Aetna's remaining enumerations of error, including disallowance of the newly discovered

evidence as to Hanson's acting without the scope of his employment and submission of improper proof of punitive damages, as they are unlikely to arise upon a new trial.

*Judgment reversed. Birdsong and Carley, JJ., concur.*

DECIDED JUNE 25, 1984.

*Dorothy Y. Kirkley, Mark B. Wesson, Elizabeth J. Mallory*, for appellant.

*Charles A. Gower*, for appellee.