[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10426

_____

D.C. Docket No. 3:11-cv-00061-TCB

STEVE D. MCGOWAN,
TERESA L. MCGOWAN,

Plaintiffs - Appellants,

THE MCGOWAN COMPANY, LLC,

Plaintiff,

versus

HOMEWARD RESIDENTIAL, INC.,
f.k.a. American Home Mortgage Servicing, Inc.,
FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a.k.a. Fannie Mae,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 11, 2012)

Before DUBINA, Chief Judge, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

This dispute arises out of Homeward Residential, Inc.'s attempts to foreclose on real estate that Steve and Teresa McGowan owned.[1]  The McGowans contend that they made all the required monthly payments to Homeward and it had no right to try to foreclose on their properties.

## I.

The McGowans owned seven rental properties in Carroll County, Georgia with mortgages serviced by Homeward.  In December 2009, they asked Homeward to reduce the monthly payments they were required to make on three of those properties so that they in turn could reduce the rent they charged, making the properties more attractive to renters.  In response, Homeward sent the McGowans three "forbearance plan letters," one for each of the properties.  Those letters allowed the McGowans to make lower monthly payments on the mortgages for those properties during a four-month period beginning in April 2010.  In the letters, Homeward agreed to "forbear from continuing with foreclosure proceedings," and

---

[1] At the time the events leading up to this lawsuit occurred, Homeward Residential, Inc. was doing business as American Home Mortgage Servicing, Inc.  We refer to it by its present name.

2

promised to consider a loan modification at the end of the forbearance period if the McGowans made all the specified monthly payments.[2]

The McGowans agreed to those terms and began making the monthly payments specified in the forbearance agreements. Shortly thereafter, they began receiving phone calls from debt collectors and threats of foreclosure on the three mortgages for which they were making reduced payments. They continued to make the specified payments and at the end of the forbearance period contacted Homeward about obtaining a permanent loan modification. Homeward then advised the McGowans that "there were no forbearance plans in place." In response, the McGowans began paying their regular monthly payments, but Homeward returned their checks and began "instituting foreclosure proceedings" on two of the properties and threatened to foreclose on the third one.

Homeward also ran in the local newspaper foreclosure advertisements for two of the McGowans' properties and reported to the three major consumer reporting agencies that four of the McGowans' properties had been foreclosed on. Because of Homeward's actions the McGowans "were forced to short sale [sic] all seven (7) properties during the spring of 2011."

---

[2] Although the letters promised that Homeward would forbear from continuing with foreclosure proceedings, the McGowans were current with their payments at the time Homeward sent those letters, so they were not subject to foreclosure at that time.

3

## II.

The McGowans sued Homeward in Georgia state court alleging breach of contract, attempted wrongful foreclosure, and fraud by misrepresentation.  The first amended complaint added a negligence claim and the second amended complaint added a plaintiff and a defendant.[3]  Homeward removed the case to federal district court and moved to dismiss the second amended complaint for failure to state a claim.  The district court granted that motion and gave the McGowans leave to amend their complaint but only for purposes of asserting a libel claim.  The McGowans then filed a third amended complaint alleging libel on the grounds that Homeward:  (1) falsely reported four foreclosures to the three major CRAs; and (2) ran false advertisements of foreclosure in the local newspaper.  Homeward moved to dismiss for failure to state a claim, and the district court granted that motion.  This is the McGowans' appeal of the dismissals of their second and third amended complaints.

## III.

We review <u>de novo</u> the dismissal of a complaint for failure to state a claim, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff[s]."  <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d

---

[3] The additional plaintiff was The McGowan Company, LLC, which is not a party to this appeal.  The additional defendant was the Federal National Mortgage Association.  That defendant and Homeward jointly filed a single brief in this Court, so we will refer to them collectively as Homeward.

1283, 1288 (11th Cir 2010).  To avoid dismissal, plaintiffs "must plead a claim to relief that is plausible on its face."  Butler v. Sheriff of Palm Beach Cnty., 685 F.3d 1261, 1265 (11th Cir. 2012) (quotation marks omitted).  Because a motion to dismiss for failure to state a claim tests the sufficiency of the pleadings, we look only to the McGowans' second and third amended complaints and determine whether each one standing on its own states any plausible claim for relief.  See Am. Dental Ass'n, 605 F.3d at 1288–90.

IV.

A.

The McGowans' second amended complaint alleges four claims:  (1) breach of contract; (2) attempted wrongful foreclosure; (3) fraud/misrepresentation; and (4) negligence.  As to the breach of contract claim, the McGowans allege that Homeward breached the forbearance agreements by initiating foreclosure even though it had promised to "forbear from continuing with foreclosure proceedings." That claim fails because the forbearance agreements are unenforceable for lack of consideration under the pre-existing duty rule, which provides that "[a]n agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another."  Citizens Trust Bank v. White, 618 S.E.2d 9, 11–12 (Ga. Ct. App. 2005).  At the time the McGowans entered into the forbearance agreements, they were already obligated to make monthly payments to

5

Homeward.  Although Homeward's promise to forbear from foreclosure was consideration, the McGowans' promise to pay a debt they already owed was not. See id. at 11.

The McGowans contend that even if the forbearance agreements are not binding contracts, they have stated a claim under the doctrine of promissory estoppel.  That contention also fails.  The actual forbearance agreement, which was attached to the second amended complaint, stated only that if the McGowans strictly complied with the agreement Homeward "shall forbear from continuing with foreclosure proceedings" and would "consider a modification of [the McGowans'] loan."  The first part of that promise does not make sense because there were then no pending foreclosure proceedings "to forbear from continuing." And a promise to consider doing something is illusory.  Those types of promises cannot support a claim for promissory estoppel under Georgia law.  See Ga. Investments Int'l, Inc. v. Branch Banking and Trust Co., 700 S.E.2d 662, 664 (Ga. Ct. App. 2010) ("Promissory estoppel does not . . . apply to vague or indefinite promises, or promises of uncertain duration.").

As to the attempted wrongful foreclosure claim in the second amended complaint, Georgia law recognizes such a claim when a foreclosure action was commenced but not completed but only if the plaintiffs also show that the defendant knowingly published an untrue and derogatory statement concerning

6

their financial conditions and the plaintiffs sustained damages as a direct result of that statement. Aetna Fin. Co. v. Culpepper, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984) ("Those decisions upon which [the plaintiff] relies to support her contention that she could recover damages for a wrongful attempted foreclosure require a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication." (emphasis removed)). The second amended complaint does not allege that Homeward published any false statements. Accordingly, the second amended complaint does not state a claim for attempted wrongful foreclosure under Georgia law.

The remaining claims of the second amended complaint similarly allege only that Homeward breached the forbearance agreements. The fraud/misrepresentation claim alleges that Homeward attempted to foreclose even though the forbearance agreements had promised to forbear from foreclosure. Similarly, the negligence claim alleges only that Homeward breached a duty by attempting to foreclose even though the forbearance agreements prohibited them from doing so. Because we have concluded that the forbearance agreements are not binding, we affirm the dismissal of those claims.

B.

The McGowans' third amended complaint alleges libel on the grounds that Homeward:  (1) falsely reported four foreclosures to the three major CRAs; and (2) ran false advertisements of foreclosure in the local newspaper.  To state a claim for libel under Georgia law, the McGowans must plead a false statement that either: (1) is libel per se; or (2) caused them to suffer special damages.  Webster v. Wilkins, 456 S.E.2d 699, 701 (Ga. Ct. App. 1995).  Libel per se is a false statement "that one is guilty of a crime, dishonesty or immorality . . . [or] that tend[s] to injure one in his trade or business."  Zarach v. Atlanta Claims Ass'n, 500 S.E.2d 1, 5 (Ga. Ct. App. 1998).  The false reports to the CRAs and the false newspaper advertisements of foreclosure do not meet that standard.  Mell v. Edge, 22 S.E.2d 738, 739 (Ga. Ct. App. 1942) ("[A] writing containing the mere statement that a person . . . owes a debt and refuses to pay, or owes a debt which is long past due, is not libelous per se and does not render the author . . . liable without proof of special damages."); see also Sumner v. First Union Nat'l Bank of Ga., 409 S.E.2d 212, 213–14 (Ga. Ct. App. 1991) ("An allegation that one owes a delinquent debt does not impute that he has committed a crime."); Floyd v. Atlanta Newspapers, Inc., 117 S.E.2d 906, 909 (Ga. Ct. App. 1960) ("[M]erely to charge one as a delinquent debtor is, as a matter of law, not libelous per se. . . .").

8

The only remaining way that the McGowans' libel claims can stand is if special damages have been properly pleaded.  Although the Federal Rules of Civil Procedure generally require only "a short and plain statement . . . showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), there is a heightened pleading standard for special damages.  Rule 9(g) states, "If an item of special damage is claimed, it must be specifically stated."  Fed. R. Civ. P. 9(g).

The McGowans' third amended complaint fails to satisfy that heightened pleading standard.  Four of the five libel counts allege only that the McGowans "suffered injury."  The fifth one alleges that Mr. McGowan was denied 0% financing on the purchase of a new car because his credit report showed foreclosures.  It does not, however, allege that he financed the purchase of a car on less favorable terms, or was unable to obtain financing at all, or otherwise suffered a monetary loss.  Because the third amended complaint has not specifically stated special damages as required by Rule 9(g), it fails to state a claim.  See Zarach, 500 S.E.2d at 5 (stating that special damages "must be the loss of money, or of some other material temporal advantage capable of being assessed in monetary value"); Hicks v. McLain's Bldg. Materials, Inc., 433 S.E.2d 114, 116 (Ga. Ct. App. 1993) ("[T]he generalized allegations of appellant and her husband that they might have

9

been hindered in obtaining credit . . . are insufficient to establish special

damage.").[4]

**AFFIRMED.**

---

[4] Because the third amended complaint does not state a claim for libel for the reasons we have discussed, we do not address Homeward's argument that the Fair Credit Reporting Act preempts that claim.