[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14427
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00548-TCB


MATTHEW THOMAS,
MIRIAM THOMAS,

                                             Plaintiffs - Appellants,

versus

US BANK NATIONAL ASSOCIATION,
RUBIN LUBLIN, LLC,

                                             Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 12, 2017)

Before TJOFLAT, HULL, and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Plaintiffs Matthew and Miriam Thomas (the "Thomases") pro se appeal the district court's dismissal of their claims against U.S. Bank National Association ("U.S. Bank") and law firm Rubin Lublin, LLC (the "Rubin law firm") for breach of contract, wrongful attempted foreclosure, and violations of the Fair Debt Collection Practices Act ("FDCPA") and the Real Estate Settlement Procedures Act ("RESPA"). After review, we affirm.

## I.  BACKGROUND

Because this appeal concerns the dismissal of the Thomases' claims, we recount the factual allegations from the operative amended complaint. See Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006) (noting that on review of a motion to dismiss, the factual allegations are accepted as true). We also discuss the procedural history.

### A.    Factual Allegations

In October 2006, the Thomases purchased residential property in Fulton County, Georgia by obtaining a mortgage loan from Freedom Mortgage Corporation ("Freedom"). The loan was secured by a security deed, which named Mortgage Electronic Registration Systems, Inc. ("MERS") as the grantee of record, acting as nominee for the lender Freedom. In June 2011, the grantee MERS assigned the security deed to defendant "U.S. Bank, National Association, as

Trustee for the holders of the specialty underwriting and residential finance trust, mortgage loan asset-backed certificates, series 2007-BCI."

The Thomases' amended complaint acknowledges that prior to the June 2011 assignment to U.S. Bank they had "trouble meeting their payments on the loan and defaulted." So when U.S. Bank acquired the security deed, the Thomases had already defaulted. After default, the Thomases sought "an affordable loan modification" from U.S. Bank but were unsuccessful. The Thomases do not allege that they made payments to cure the default or otherwise attempted to bring the loan current.

On December 3, 2013, Nationstar Mortgage, LLC ("Nationstar"), acting on behalf of U.S. Bank, sent a letter addressed to the Thomases at 1240 Regency Center Drive SW, Atlanta, GA 30331-2081, which is the property at issue. The letter stated that "Nationstar is the mortgage loan servicer for 'U.S. Bank National Association, as Trustee, in trust for registered holders of Specialty Underwriting and Residential Finance Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-BC1.'" The letter stated that the Thomases had not made payments on their loan since June 1, 2009, and that the Thomases now owed past due mortgage payments, interest, and fees in the amount of $217,075.54 due from June 1, 2009, to December 3, 2013. The acceleration letter advised that the Thomases were required to pay that $217,075.54 by January 7, 2014, to cure their default. The

3

acceleration letter advised that failure to pay $217,075.54 and cure the default "may result in acceleration of the sums secured by the Security Instrument, foreclosure proceedings and sale of the property." A copy of this acceleration letter was attached to U.S. Bank's motion to dismiss.

In their response to the motions to dismiss, the Thomases stated that they "challenge[d] the authenticity" of the December 3, 2013 acceleration letter because it was "completely unsworn and unauthenticated by affidavit, deposition or otherwise." The Thomases denied that the acceleration letter was provided to them and argued that they were entitled to discovery to determine the authenticity of that letter.

The magistrate judge determined that "because the Plaintiffs challenge the authenticity of the purported Acceleration Notice, the Court may not consider that document as part of the pleadings for the purpose of resolving the Defendants' Motions to Dismiss." See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

But there is another notice letter to the Thomases that is attached to their own amended complaint that they do not dispute. In January 2014, the defendant Rubin law firm sent two letters to the Thomases on behalf of U.S. Bank as Trustee. The letters notified the Thomases that the Rubin law firm was representing U.S. Bank, that U.S. Bank and the Rubin law firm were instituting foreclosure proceedings against the Thomases' residential property, and that the entire amount

4

of the mortgage debt—$590,684.36—was due immediately.  The January 14, 2014

letter stated as follows:

> The entire amount of the debt secured by [the] Note and Security
> Deed has now been declared due and payable because, among other
> possible defaults, failure to pay the indebtedness as and when due and
> in the manner specified in the Note and Security Deed.  <u>The total
> amount of the debt owed may consist of unpaid principal balance, any
> unpaid accrued interest, escrow/impound shortages or credits, late
> charges, legal fees/costs, and other charges.  To find out the amount
> needed to either bring your Loan current or to pay off your Loan in
> full, please call [the listed telephone number].</u>

U.S. Bank reported the "foreclosure default" to credit reporting agencies

Equifax, Trans Union, and Experian, which negatively affected the Thomases'

credit score.  U.S. Bank also advertised the Thomases' home "for foreclosure,"

which caused the Thomases to experience embarrassment, mental anguish, and

emotional distress.  The Thomases did not allege that the property was ever sold at

a foreclosure sale or otherwise.  But the Thomases did allege that the two January

2014 letters that the Rubin law firm sent did not comply with the acceleration

notice requirements under the security deed.

On February 18, 2014, the Thomases sent a "R.E.S.P.A. Qualified Written

Request" letter to U.S. Bank.  The letter requested, <u>inter alia</u>, that U.S. Bank

provide the Thomases with the following information:  (1) "[a] complete audit

history from alleged loan origination, showing the dates payments were applied,

and to what internal accounts . . . payments were applied," (2) "[a] complete and

5

itemized statement of all advances or charges against this account," and (3) "[a] complete and itemized statement of the escrow for this account, if any, from the date of the note origination to the date of [U.S. Bank's] response to [the Thomases' February 2014] letter."

Seven days later, the Thomases filed their lawsuit against U.S. Bank and the Rubin law firm.  The Thomases allege that U.S. Bank never responded to their February 18, 2014 letter.

## B.    Procedural History

On February 25, 2014, the Thomases filed their initial complaint against U.S. Bank and the Rubin law firm.[1]  The defendants responded with a motion to dismiss, but the district court granted the Thomases' motion for leave to amend the complaint and denied the motion to dismiss as moot.  The Thomases then filed an amended complaint, which included, inter alia, these exhibits:  the note, the security deed, the June 2011 assignment of the security deed from MERS to U.S. Bank, the Rubin law firm's two January 2014 letters, and the Thomases' February 18, 2014 letter.

Defendants U.S. Bank and the Rubin law firm then filed separate motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  After

---

[1]The Thomases have proceeded pro se both in the district court and on appeal.  We recognize that pro se pleadings are to be liberally construed.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

6

full briefing, the magistrate judge recommended, in a Report, that both motions

should be granted as to all claims in the amended complaint.  The district court

overruled the Thomases' objections, adopted the Report, and dismissed the

amended complaint.  The district court also denied the Thomases' motion for

reconsideration.  This appeal followed.

## II.  DISCUSSION

On appeal, the Thomases challenge the dismissal of their breach of contract,

wrongful attempted foreclosure, FDCPA, and RESPA claims.[2]  We address each

claim below.[3]

## A.    Breach of Contract

As to their breach of contract claim, the Thomases alleged that U.S. Bank

breached the terms of the security deed by failing to provide adequate notice before

accelerating the debt and threatening foreclosure.  The Thomases contend that they

suffered damages in these two ways:  (1) U.S. Bank's reporting of the Thomases'

"foreclosure default" to credit agencies lowered their credit score, and (2) U.S.

---

[2]The Thomases also asserted claims for negligence, declaratory relief, and violations of the Truth in Lending Act, but the Thomases do not challenge the dismissal of those claims.

[3]We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6). Glover, 459 F.3d at 1308.  We accept the factual allegations in the complaint as true, construing them in the light most favorable to the plaintiff.  Id.  A formulaic recitation of the elements of a claim is insufficient to survive a motion to dismiss.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  The complaint survives a motion to dismiss only where the factual allegations "plausibly suggest an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 681, 129 S. Ct. 1937, 1951 (2009).

7

Bank's advertisement of their home "for foreclosure" caused them to experience embarrassment, mental anguish, and emotional distress.

Under Georgia law, the elements of a claim for breach of contract are "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014) (internal quotation marks omitted) (quoting Norton v. Budget Rent A Car Sys., Inc., 705 S.E. 2d 305, 306 (Ga. Ct. App. 2010)). In the context of breach of contract claims arising from premature or improper exercise of the power to accelerate indebtedness and sell property under the terms of a security deed, the plaintiff must show that damages would not have occurred but for the alleged breach. Id. at 1132-33.

Here, the Thomases' amended complaint admitted that they defaulted on their mortgage payments and never cured the default. Indeed, even according to the amended complaint, the default occurred "sometime prior to the assignment" of the security deed to U.S. Bank in 2011, which was years before U.S. Bank sought to accelerate. Knowing they had defaulted, the Thomases admitted that they even sought a loan modification from U.S. Bank. But the Thomases never brought the loan current or otherwise cured the default in the years that followed.

Whether the past due debt of $217,075.54 was properly accelerated to $590,684.36 does not change the fact that the Thomases defaulted on their

8

mortgage and did not cure that default.  Any negative credit reporting or emotional injury would have resulted from this default and failure to cure regardless of whether U.S. Bank sent an acceleration notice that complied with the terms of the security deed.  The factual allegations do not allow the reasonable inference that the alleged damages would not have occurred but for U.S. Bank's failure to give proper acceleration notice.  See id. at 1130, 1133; Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

## B.    Wrongful Attempted Foreclosure

The amended complaint did not include a count for wrongful attempted foreclosure, but the Thomases attempted to assert such a claim in their response to U.S. Bank's and the Rubin law firm's motions to dismiss.  The Thomases' response to the motions to dismiss argued that U.S. Bank did not have an enforceable security interest in the property and thus was "without authority to foreclose property."  The Thomases did attach to their amended complaint a July 2013 assignment instrument between Bank of America, N.A. and Nationstar, which purports to assign the security deed to Nationstar.  U.S. Bank contends that, because U.S. Bank was the holder of the security deed in July 2013, Bank of America, N.A. had no interest in the security deed and that this assignment is a nullity.  We need not decide this issue on appeal for several reasons.

First, we affirm the dismissal of this wrongful attempted foreclosure claim because it was not in the amended complaint and was only raised in the Thomases' response to the defendants' motions to dismiss.

Second, although the Thomases admit that U.S. Bank was a holder of the security deed, the Thomases do not allege how Bank of America, N.A. obtained any ownership of the security deed to assign it to Nationstar.[4]  There is also no allegation in the amended complaint, or documentary evidence for that matter, that U.S. Bank assigned the security deed to Bank of America, N.A.

Third, as an independent and alternative reason, because the property was never foreclosed, the Thomases do not assert a claim for "wrongful foreclosure," but only for "wrongful attempted foreclosure."  To prevail on a claim for wrongful attempted foreclosure under Georgia law, the plaintiff must prove "a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication."  Bates, 768 F.3d at 1134 (internal quotation marks omitted) (quoting Aetna Fin. Co. v. Culpepper, 320 S.E. 2d 228, 232 (Ga. Ct. App. 1984)). The amended complaint includes no allegations indicating that U.S. Bank or the Rubin law firm published any false or derogatory information concerning the

---

[4]The Thomases submit, in their amended complaint, that they are not "challenging any assignments."

Thomases' financial condition.  Accordingly, the Thomases failed to state a plausible claim for wrongful attempted foreclosure.

## C.    FDCPA

As to their FDCPA claim, the Thomases alleged, in conclusory fashion, that defendants U.S. Bank and the Rubin law firm are "debt collectors" within the meaning of the FDCPA.  The Thomases further alleged that the defendants did not comply with the pre-acceleration notice requirements of the security deed before sending letters threatening foreclosure and therefore the defendants threatened to take action they could not legally take in violation of §§ 1692e and 1692f of the FDCPA.

The FDCPA bars "debt collectors" from engaging in certain abusive practices in connection with the collection of debt.  See 15 U.S.C. § 1692.  For example, § 1692e provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Id. § 1692e.  Section 1692f provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  Id. § 1692f.  By the terms of its substantive provisions, the FDCPA only applies to the actions of a "debt collector."  Id. §§ 1692e, 1692f; see Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1313 (11th Cir. 2015) ("There is no dispute that § 1692e applies only to debt collectors.").

This district court did not err in concluding that the factual allegations in the amended complaint were insufficient to show that the defendants were "debt collectors."  The term "debt collector" is defined in the FDCPA as (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

Here, aside from the bare legal conclusion that U.S. Bank and the Rubin law firm qualify as "debt collectors" under the FDCPA, the Thomases' amended complaint makes no allegations suggesting that these defendants fall within the statutory definition of that term.  The amended complaint includes no allegations indicating that (1) either U.S. Bank's or the Rubin law firm's principal business is the collection of debts or (2) either U.S. Bank or the Rubin law firm regularly collects or attempts to collect debts owed to another.  See 15 U.S.C. § 1692a(6). Although U.S. Bank acquired the Thomases' debt after the Thomases defaulted, this Court has concluded that the fact that a person acquired a debt after the borrower defaulted on that debt is not sufficient to indicate that the person who acquired the debt qualifies as a "debt collector" under the FDCPA.  Davidson, 797 F.3d at 1313-16.  A person acquiring a debt after default is only a "debt collector"

12

where that person otherwise meets the statutory definition.  Id. at 1316.  Therefore, the Thomases' FDCPA claim fails.

## D.    RESPA

With respect to their RESPA claim against U.S. Bank, the Thomases summarily alleged that some of their loan payments were not properly credited to their loan account, that they sent a letter to U.S. Bank on February 18, 2014, requesting information regarding their loan account, and that U.S. Bank never responded to that letter.[5]  The Thomases contend that their February 18, 2014 letter to U.S. Bank constituted a "Qualified Written Request" ("QWR") under RESPA, that U.S. Bank's failure to timely respond to that letter was in violation of RESPA, and that they are entitled to damages resulting from that violation.

RESPA imposes certain duties on loan "servicers" for the purpose of protecting consumers.  Pertinent here are RESPA's procedures for providing additional loan information to a borrower upon the borrower's request.  See 12 U.S.C. § 2605.  A borrower seeking information about a loan can contact the loan servicer by sending a QWR, which is a written correspondence that (1) "includes,

---

[5]The Thomases made no factual allegations as to the amount of payments not credited, the number of payments, or when the payments were made.  They only made the conclusory allegations that some of their payments were not credited and that they would not have been in default if they had received credit for all their payments.  Importantly too, the Thomases made these allegations only in the RESPA claim.  The December 3, 2013 acceleration letter from Nationstar states that Nationstar is the "loan servicer."  As noted earlier, the Thomases dispute the authenticity of that letter, but we need not rely on it because the factual allegations are insufficient to show that U.S. Bank is the loan servicer.

or otherwise enables the servicer to identify, the name and account of the borrower" and (2) "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." Id. § 2605(e)(1)(B).

When a loan servicer receives a QWR from a borrower, the loan servicer must first provide to the borrower, within five days, a written response acknowledging receipt of the QWR. Id. § 2605(e)(1)(A). The loan servicer must then, within thirty days of receiving the QWR, send the borrower a written response explaining any corrections to the borrower's loan account, clarifying the reasons that the loan servicer believes the borrower's account is accurate, or providing the information the borrower requested. Id. § 2605(e)(2). A borrower who shows that a loan servicer failed to carry out its duties under this provision may be entitled to actual and/or statutory damages. Id. § 2605(f). This Court has held that "damages are an essential element in pleading a RESPA claim." Renfroe v. Nationstar Mortg., LCC, 822 F.3d 1241, 1246 (11th Cir. 2016). The Thomases' RESPA claim fails for two reasons.

First, the amended complaint is devoid of factual allegations indicating that U.S. Bank qualifies as a "servicer" of the Thomases' mortgage within the meaning of § 2605. See 12 U.S.C. § 2605(i) (defining "servicer" as "the person responsible

for servicing of a loan" and "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower"). The allegations in the amended complaint say nothing about whether U.S. Bank is responsible for receiving and otherwise handling payments on the Thomases' mortgage loan.

Second, even assuming arguendo that U.S. Bank can be considered a "loan servicer," the Thomases did not allege any facts indicating that U.S. Bank's failure to respond to the February 18, 2014 letter caused them any cognizable damages.[6] As noted in relation to the Thomases' breach of contract claim, any injury the Thomases suffered is attributable to their 2011 default and failure to cure, which occurred years before the Thomases sent this purported QWR letter in 2014. The Thomases were aware of this 2011 default and did not bring the loan current or otherwise cure the default in the years that followed. The amended complaint is insufficient to show that the Thomases are entitled to actual or statutory damages under RESPA. See 12 U.S.C. § 2605(f) (providing that borrowers may recover

---

[6]RESPA allows the loan servicer thirty days to provide a substantive response to the borrower's QWR. 12 U.S.C. § 2605(e)(2). The Thomases filed suit within seven days after sending the February 18, 2014 letter to U.S. Bank. But the Thomases did not raise a RESPA claim until they filed their amended complaint on May 12, 2014, which was eighty-four days after the Thomases sent their February 18, 2014 letter. We need not decide the significance of this timing or of U.S. Bank's alleged failure to respond because the factual allegations in the amended complaint are insufficient to show that U.S. Bank qualifies as a "loan servicer" or that the Thomases suffered damages as a result of U.S. Bank's alleged failure to respond.

15

actual damages incurred as a result of the RESPA violation and statutory damages

"in the case of a pattern or practice of noncompliance with the requirements" of the

statute).

## III.  CONCLUSION

For all of the foregoing reasons, we affirm the dismissal of the Thomases'

claims against U.S. Bank and the Rubin law firm for breach of contract, wrongful

attempted foreclosure, and violations of the FDCPA and RESPA.

**AFFIRMED.**