**THIRD DIVISION
ELLINGTON, P. J.,
ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 8, 2017**

# In the Court of Appeals of Georgia

A17A1735. 100 LAKESIDE TRAIL TRUST et al. v. BANK OF
AMERICA, N.A.

ELLINGTON, Presiding Judge.

In 2013, Bank of America, N.A., filed this action in the Superior Court of Fayette County against 100 Lakeside Trail Trust and Jum U. Ra'Oof (collectively, "the appellants"), seeking, inter alia, equitable reformation of a 2007 security deed based on mutual mistake. The bank alleged that the security deed mistakenly identified Ra'Oof individually as the grantor, when the actual owner of the subject property and intended grantor was the trust, which Ra'Oof served as trustee. In addition, the bank sought a declaratory judgment that the security deed remains in full force and effect, and evidences a perfected, valid, enforceable, first-priority security interest in the property. The appellants asserted a counterclaim for wrongful

attempted foreclosure. The parties filed cross motions for summary judgment. After a hearing, the trial court granted the bank's motion for summary judgment on affirmative defenses asserted by the appellants.[1] The trial court granted the bank's claim for equitable reformation of the security deed to identify the trust as the grantor, and to correctly reflect that Ra'Oof executed the security deed in his capacity as trustee of the trust, rather than in his individual capacity. The trial court also granted the bank's motion for summary judgment on its claim for declaratory judgment and declared that the security deed has not been extinguished, as the appellants alleged. Finally, the trial court denied the appellants' cross motion for summary judgment.

On appeal, the appellants contend that the bank's action is barred by the doctrine of laches and the doctrine of unclean hands and, therefore, that the trial court erred in reforming the deed. In addition, the appellants contend that the trial court erred in declaring that the security deed has not been extinguished, arguing specifically that the 2007 security deed in favor of a different lender was not assigned to the bank in a manner that makes the interest enforceable against them under the

---

[1] The appellants asserted as defenses (1) failure to state a claim upon which relief can be granted; (2) lack of privity between the parties; (3) unclean hands; (4) res judicata; (5) judicial estoppel; (6) laches; and (7) lack of proper service and lack of proper process.

Statute of Frauds, that the evidence establishes that the bank is not a holder in due course, and that the bank wrongfully refused to accept the appellants' tender of funds to pay off the debt secured by the subject property. The appellants also contend that the evidence shows that the bank sought foreclosure in bad faith and, therefore, that the trial court erred in granting summary judgment in favor of the bank on their counterclaim for wrongful attempted foreclosure. Finding no merit in any of the appellants' arguments on appeal, as explained below, we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). When a plaintiff moves for summary judgment, it "has the burden of establishing the absence or non-existence of any defense raised by the defendant." (Citation and punctuation omitted.) *Vance v. FD 2011-C1 Grove Rd.*, 340 Ga. App. 36 (795 SE2d 747) (2016).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). The relevant facts that follow are undisputed unless otherwise noted.

In March 2003, Ra'Oof purchased 100 Lakeside Trail, a residence in Fayette County. For estate planning purposes, Ra'Oof, as grantor, executed a quitclaim deed on April 19, 2005, conveying the property to "100 Lakeside Trail Trust, Jum U. Ra'Oof, as Trustee." In 2007, he refinanced the debt secured by the property. On November 16, 2007, he executed a promissory note to the new lender, Countrywide Bank, FSB, and also executed a security deed to secure the debt. His signature line on both documents identified him as "Jum U. Ra'Oof - Borrower" and made no reference to his capacity as trustee. Ra'Oof deposed, however, that he knew that the trust owned the property at that time and that his intention in executing the documents was to do so in his capacity as the trustee. After this transaction, the bank acquired Countrywide and its assets, including its interest in the 2007 security deed and promissory note at issue in this case.

Ra'Oof deposed that he stopped making payments on the promissory note in 2010, based on employees of the bank telling him that, in order to get a loan modification as he desired, he had to be three months behind on his payments. The

4

bank did not approve the loan modification and soon thereafter published a notice of foreclosure. The appellants resisted foreclosure by initiating litigation that unsuccessfully challenged the bank's standing. This action followed in 2013.

On October 5, 2015, while this case was pending in the trial court, Ra'Oof requested a payoff letter from the bank's loan servicer, Seterus, Inc. The same day, Seterus faxed a payoff statement to Ra'Oof's attorney. The letter gave instructions for tendering the payoff amount due as of October 9, 2015, calculated as $607,563.67, and stated that the payoff statement would expire on that date. The letter gave two options under the heading "Payment Instructions:" one labeled "Wiring Instructions," and one labeled "Overnight Address." The letter stated, "If you do not pay prior to [October 9, 2015], please request an updated payoff prior to sending any funds." The letter also stated, "Funds received after October 09, 2015 will require an additional $66.89 interest per day." Ra'Oof did not tender payment before the payoff statement expired.

On December 18, 2015, Ra'Oof's attorney sent a letter to Seterus, stating that Ra'Oof had authorized her to accept Seterus's payoff demand and tender full payment due in regard to the promissory note on his behalf. The attorney's letter stated:

Your correspondence indicates that the tender must be made at your location in Roswell. Please have a representative of your company available to make the exchange. We will be making full presentment of the certified funds in person at your offices located at 14523 S.W. Millikan Way, Suite 200 Beaverton, OR 97005 on or after December 18, 2015. Please understand that under the contractual agreement, and in accordance with Georgia law, you must obtain the funds by closing the account out and exchanging the original Note marked "Paid In Full" for the funds in person. Due to the above listed discrepancies, we will not accept a separate receipt as evidence of your right to the funds. Tendered funds will not be surrendered without immediate exchange for the original Note. You have until the date the funds are tendered in person to produce and surrender the original promissory Note in exchange for the tendered funds. Failure to surrender the original Note and accept the tendered funds will result in the discharge of the Security Deed instantly. At that point, all foreclosure action must cease immediately and forever. Any attempt to foreclose after the tender has been made will be deemed as an act of fraud and will be prosecuted to the fullest extent of the law.

Later on December 18, Ra'Oof's representative called and spoke with a Seterus employee in the Beaverton, Oregon office about the intended personal delivery of a cashier's check in the amount of $630,000. The Seterus employee told Ra'Oof's representative that the Beaverton office would not accept the funds in person.

Ra'Oof's representative went to the Beaverton office with the check on December 18 and on December 19 but was not admitted to the office.

1. The appellants contend that the bank's action is barred by the doctrine of laches and, therefore, that the trial court erred in reforming the deed. OCGA § 23-1-25 provides: "Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, even when no legal limitation bars the right." See also OCGA § 9-3-3 ("[C]ourts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights."). "Of course, laches does not arise from delay alone. To prevail on a plea of laches, prejudice, too, must be shown." (Citation omitted.) *Stone v. Williams*, 265 Ga. 480 (458 SE2d 343) (1995).

Prejudice may arise from a change in conditions such as will "preclude the court from arriving at a safe conclusion as to the truth of matters in controversy, and which makes the doing of equity doubtful or impossible," such as the death of a key witness. (Citations omitted.) *Whitfield v. Whitfield*, 204 Ga. 64, 67 (48 SE2d 852) (1948). In this case, the appellants have not identified any unavailable witness or other evidence that would make it difficult for the trial court to arrive at the truth of any material fact. To the contrary, Ra'Oof himself supplied the essential evidence in

favor of reforming the security deed when he testified that, when he executed the security deed to secure his promissory note to Countrywide, he knew that the trust owned the property and that both he and Countrywide intended for him to execute the security deed in his capacity as trustee, rather than in his individual capacity. See *Salas v. JP Morgan Chase Bank*, 334 Ga. App. 274, 281 (3) (779 SE2d 48) (2015) (2015). ("A written instrument can be reformed under equity if there is a mutual mistake between the parties. A 'mutual mistake' in an action for reformation means one in which both parties had agreed on the terms of the contract, but by mistake of the scrivener the true terms of the agreement were not set forth.") (citation and punctuation omitted).

Furthermore, the appellants cannot otherwise show prejudice. A party "will not be prejudiced by the reformation of a deed so as to make it speak the truth." *McCollum v. Loveless*, 187 Ga. 262, 267 (3) (200 SE 115) (1938). See also *Hill v. Agnew*, 199 Ga. 644, 646 (34 SE2d 702) (1945) ("If [a buyer] gets what he bought, then he cannot be hurt by reforming the instrument, so as to keep him from getting what he did not buy.") (citation and punctuation omitted). The appellants' laches argument lacks merit.

2. The appellants contend that the bank's action is barred by the doctrine of unclean hands and, therefore, that the trial court erred in reforming the deed.

> "Unclean hands" is a shorthand reference to OCGA § 23-1-10, which states, "He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." However, relief is precluded only if the inequity so infects the cause of action that to entertain it would be violative of conscience.

(Citations and punctuation omitted.) *Goodson v. Ford*, 290 Ga. 662, 666 (5) (725 SE2d 229) (2012).

In terms of the bank's conduct, the appellants allege that in 2009, when the bank acquired Countrywide's assets in bulk through a corporate merger, the bank "failed to perform a title search and recklessly purchased [the note and security deed executed by Ra'Oof] in hopes of finding a way to overcome defective title." In addition, they allege that, in 2010, the bank "induced Ra'Oof to stop making payments on a mortgage in order to qualify for a loan modification" and then "willfully pursued a foreclosure of the Subject Property knowing that its purported rights were defective." Regardless whether it may have been imprudent for the bank to fail to perform a title search with regard to each of the notes and security deeds it acquired as the successor to Countrywide's interests, it can hardly be deemed

9

inequitable toward obligors like the appellants for the bank to fail to protect itself in this way. In addition, the bank maintains that it "remains ready and willing to accept the outstanding balance of the loan from Ra'Oof if he wishes to pay it" and eliminate the need for the foreclosure that this litigation would facilitate.

More importantly, under the unclean hands doctrine, the alleged "wrongdoing must be directly related to the claim against which unclean hands is asserted." (Citation omitted.) *Higdon v. Higdon*, 321 Ga. App. 260, 263 (1) (739 SE2d 498) (2013). See *West v. Equifax Credit Information Svcs.*, 230 Ga. App. 41, 44 (495 SE2d 300) (1997). Because none of the bank's alleged wrongful acts relate in any way to the material question in the bank's reformation claim, that is, whether in 2007 Ra'Oof (as the trustee for the grantor), and Countrywide (as the grantee) intended for the trust (as the grantor) to convey a security interest in its property to Countrywide, this argument lacks merit.

3. The appellants contend that the trial court erred in declaring that the security deed has not been extinguished, in that the 2007 security deed in favor of a different lender was not assigned to the bank in a manner that makes the interest enforceable

against them under the Statute of Frauds. As the bank contends,[2] the appellants did not raise the Statute of Frauds defense in their answer, in response to the bank's motion for summary judgment, or in their cross-motion for summary judgment.[3] Accordingly, the appellants waived the defense, and it is not properly before this Court on appeal. OCGA § 9-11-8 (c) (requiring defendant to set forth affirmatively defense of statute of frauds); *Jobling v. Shelton*, 334 Ga. App. 483, 489 (2) (c) (779 SE2d 705) (2015) ("It is well settled that this Court will not consider arguments asserted for the first time on appeal and thus neither raised nor ruled upon in the trial court. The trial court cannot be reversed on any ground or argument not presented for or against a motion for summary judgment.") (citations and punctuation omitted); *Early v. MiMedx Group, Inc.*, 330 Ga. App. 652, 655-656 (1) (b) (768 SE2d 823) (2015) (Affirmative defenses are waived unless raised in a responsive pleading or by motion.).

4. The appellants contend that the trial court erred in declaring that the security deed has not been extinguished in that the evidence establishes that the bank is not

[2] The appellants did not respond to the bank's waiver argument in their reply brief.

[3] Indeed, during his deposition, Ra'Oof expressly conceded the bank's right to step into Countrywide's shoes and enforce the note.

a holder in due course. They argue that, because Ra'Oof executed the security deed in his personal capacity rather than in his capacity as trustee, the documents "show on their face a defective transaction with defective capacity and thus defective instruments" which are "wholly voidable and unenforceable" and can impose no obligation upon the trust. They argue that the bank's failure, when it acquired Countrywide's interest in the promissory note and security deed, to inspect the chain of title and detect the break prevents it from being a holder in due course. As the bank contends, however, the appellants base this argument solely on Article 3 of the Commercial Code, Negotiable Instruments,[4] which has no application to the bank's petition for equitable reformation of the security deed based on mutual mistake because a security deed is not a negotiable instrument. See OCGA § 11-3-104 (definition of a negotiable instrument); *You v. JP Morgan Chase Bank*, 293 Ga. 67, 73 (1) (743 SE2d 428) (2013) (A security deed, "is not a negotiable instrument and is therefore not governed by Article 3" of the Commercial Code.) (citation omitted). Because the trust would receive a windfall if this Court countenanced this argument, equity requires reformation of the security deed. See *Cotton States Mut. Ins. Co. v. Woodruff*, 215 Ga. App. 511, 512 (2) (451 SE2d 106) (1994) (Where an insured

---

[4] OCGA § 11-3-101 et seq.

12

added a vehicle to an existing policy just after the vehicle was involved in an accident, the record did not show a mutual mistake regarding the parties' intent that the policy be in effect at the time of the accident. Despite the insurer's unilateral mistake, however, equity required reformation of the policy because the insured stood to obtain a windfall of insurance coverage not bargained for.).

5. The appellants contend that the trial court erred in declaring that the security deed has not been extinguished, in that the bank wrongfully refused to accept the appellants' tender of funds to pay off the debt secured by the subject property. Under Georgia law, a tender to be effective must be unconditional "except for a receipt in full or delivery of the obligation,"[5] and, therefore a borrower is authorized to couple a cash tender with a demand for surrender of the promissory note at issue and for cancellation of an associated security deed. *Lanier v. Romm*, 131 Ga. App. 531, 534 (2) (206 SE2d 588) (1974). "The refusal of a creditor to accept a proper tender in payment of a debt does not extinguish the debt, but the creditor loses the collateral benefits under the deed given to secure the debt." (Citation omitted.) *Ward v. McGuire*, 213 Ga. 563, 565 (100 SE2d 276) (1957). In modern banking practice, of course, surrender of the note is generally not a simultaneous hand-to-hand

___
[5] OCGA § 13-4-24.

13

transaction, with a lender physically placing the original note in the hands of the borrower, and time is allowed for cancellation of the deed.[6]

More importantly, the record contains no evidence that Ra'Oof's lawyer had any basis for believing that the 2007 promissory note at issue was physically located at the office of Seterus, the company under contract to service the note, designated for making payments by "Overnight" mail delivery. A letter giving a few hours' notice that funds would be tendered to the lender's agent, but only with an immediate exchange for the original note, which the agent did not possess, cannot be deemed a genuine unconditional tender. As the bank points out, the lending industry in Georgia would be doomed if any borrower could extinguish a security interest simply by tendering a payoff while demanding that "delivery of the obligation" by the secured

---

[6] OCGA § 44-14-3 (b) provides:
Whenever the indebtedness secured by any instrument is paid in full, the grantee or holder of the instrument, within 60 days of the date of the full payment, shall cause to be mailed to the grantor, at the grantor's last known address as shown on the records of the grantee or holder of the instrument, written notice of the grantee's or holder of the instrument's transmittal of notice of satisfaction or cancellation[.] . . . Whenever the indebtedness secured by any instrument is paid in full, the grantee or holder of the instrument, within 60 days of the date of the full payment, shall cause to be furnished to the clerk of the superior court of the county or counties in which the instrument is recorded a legally sufficient satisfaction or cancellation to authorize and direct the clerk or clerks to cancel the instrument of record.

14

lender be done in a way that was impossible. Because the tender was not unconditional, the bank's refusal to accept it in the manner dictated by Ra'Oof's lawyer did not extinguish the security deed. See *Southern General Ins. Co. v. Ross*, 227 Ga. App. 191, 193 (1) (489 SE2d 53) (1997).

6. The appellants contend that the evidence shows that the bank sought foreclosure in bad faith and, therefore, that the trial court erred in granting summary judgment in favor of the bank on their counterclaim for wrongful attempted foreclosure.

Under Georgia law,

an attempted wrongful foreclosure claim exists when, in the course of a foreclosure action that was not completed, a defendant makes a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and damages were sustained as a direct result of the publication.

(Citation and punctuation omitted.) *Sparra v. Deutsche Bank Nat. Trust Co.*, 336 Ga. App. 418, 421 (1) (c) (785 SE2d 78) (2016). See also *Aetna Finance Co. v. Culpepper*, 171 Ga. App. 315, 319 (1) (320 SE2d 228) (1984) (accord). The basis of the appellants' position that the attempted foreclosure was wrongful is that the bank attempted to foreclose on the subject property knowing it lacked a security interest

15

in the property. They alleged that the publication of the notice of foreclosure in the legal organ, "where all [of Ra'Oof's] neighbors, friends and acquaintances could see said notice," caused him embarrassment and humiliation. Any untrue information about *the bank's* security interest in the subject property, however, manifestly could not constitute untrue and derogatory information concerning *Ra'Oof's* financial condition. Moreover, it is undisputed that the promissory note is in default. Therefore, this claim lacks merit. *Sparra v. Deutsche Bank Nat. Trust Co.*, 336 Ga. App. at 421 (1) (c); *Aetna Finance Co. v. Culpepper*, 171 Ga. App. at 319 (1).

*Judgment affirmed. Andrews and Rickman, JJ., concur*.